*In re* LINDA JEFFERS, a Person Found Subject to Involuntary Medication (The People of the State of Illinois, Petitioner-Appellee, v. Linda Jeffers, Respondent-Appellant).

Fourth District    No. 4—92—0566

Opinion filed December 30, 1992.

John B. Lower, Jeff M. Plesko, and Penelope S. Karnes, all of Guardianship & Advocacy Commission, of Anna, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In March 1992, the trial court committed respondent, Linda Jeffers, for involuntary hospitalization in the Illinois Department of Mental Health and Developmental Disabilities (DMHDD). The State thereafter petitioned the court pursuant to section 2—107.1 of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1991, ch. 91½, par 2—107.1), for authority to administer psychotropic medication to respondent against her will. After a hearing, the court granted that petition. Respondent appeals, arguing that the court erred in granting that petition because (1) the court failed to determine that the respondent would have agreed to psychotropic medication, if she were competent, and (2) the State did not prove its case by clear and convincing evidence.

We affirm.

## I. BACKGROUND

In March 1992, Donna Fisher (respondent's daughter) and Steve Jeffers filed a petition for involuntary admission of respondent due to her mental illness, claiming that respondent suffered from severe depression as a result of losing custody of her youngest daughter to her ex-husband. The petition also claimed that she had not eaten, had not paid her bills, and appeared weak and unhealthy. That same month, the court conducted a hearing on the petition, granted it, and committed respondent to a DMHDD facility, the McFarland Mental Health Center in Springfield. She has since filed several requests for discharge, all of which the court has denied.

On June 18, 1992, Dr. Fayez Safi, respondent's treating psychiatrist, filed a petition for administration of psychotropic medication.

The next day, at the hearing on this petition, Dr. Safi testified that as a part of respondent's treatment at McFarland, he had prescribed Haldol, a psychotropic medication, for her. She initially took the medicine for a week, but then refused because she said it made her tired and made her hands, toes, tongue, and face swell. However, Dr. Safi testified that the benefits of the medication would greatly outweigh the side effects. He also said that she was not competent to make a sound judgment regarding the medication as evidenced by "her fixed delusions, which are impairing her judgment even about her need for food or drink."

Dr. Safi testified that respondent suffered from chronic paranoid schizophrenia. Since he prescribed her medication and she refused it, Dr. Safi noted that her condition had generally deteriorated. She would stand next to the pay phone in a hallway every day for 12 hours. Just prior to the hearing, she would even wake up in the middle of the night to stand next to the telephone. She refused to bathe and refused to eat because she believes they place poison in the food. Her body weight had dropped from 133 to 125 pounds since her admission. Blood tests showed that she suffered from dehydration, so they began feeding her through a tube placed down her nose to her stomach.

Dr. Safi also testified that respondent experiences continued delusions. She awoke one night and thought she saw her son and daughter in the hallway. When the staff would not let her go into the hallway, she became very abusive and physically aggressive towards the staff members. She also thought that someone wanted to get her, although she would not elaborate as to who that was. She refused to participate in individual or group therapy, but instead continually insisted that she merely wanted to get out of the hospital.

After conducting a hearing, the trial court found that respondent suffered a serious mental illness that causes suffering and deterioration of her ability to function. The court found that the symptoms of this illness had existed for a long period and that other, less restrictive, services had not worked. The court also found that (1) the benefits of the medicine would outweigh the harm, and (2) respondent lacked the capacity to make a reasoned decision about the medication. The court therefore granted the petition, and respondent appeals.

## II. ANALYSIS

### A. *Mootness*

■■ The State first argues that this appeal has become moot because the order for psychotropic medication lasted for only 90 days, and the 90 days had elapsed as of the time for filing briefs. However, despite the State's assertion to the contrary, if we held this appeal moot on these grounds, then all such appeals would become moot because the *statute* provides that "[i]n no event shall an order issued under this Section be effective for more than 90 days." (Ill. Rev. Stat. 1991, ch. 91½, par. 2—107.1(e).) Applying the mootness doctrine in this case would eliminate all similar appeals because, although the issue is likely to recur, it will not remain viable long enough to permit review. (See *People ex rel. Foreman v. Village of North Barrington* (1989), 191 Ill. App. 3d 544, 555, 547 N.E.2d 1327, 1334.) Accordingly, we hold that the mootness doctrine does not apply to this case.

### B. *Emergency Situation*

■■ Citing section 2—107 of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 2—107), the State next argues that we need not address the respondent's appeal because an emergency situation resulted when respondent refused to eat or drink. Under section 2—107 of the Code, a recipient of medical care has the right to refuse medication "unless such services are necessary to prevent the recipient from causing serious harm to himself or others." (Ill. Rev. Stat. 1991, ch. 91½, par. 2—107.) However, the trial court did not find that an emergency situation existed, but instead based its order on the statutory criteria in section 2—107.1 of the Code. Therefore, we will not address this issue.

### C. *Proof of What Respondent Would Do If Competent*

Citing *Cruzan v. Director, Missouri Department of Health* (1990), 497 U.S. 261, 278-79, 111 L. Ed. 2d 224, 242, 110 S. Ct. 2841, 2852, *In re Estate of Longeway* (1989), 133 Ill. 2d 33, 49, 549 N.E.2d 292, 299, and *In re Estate of Greenspan* (1990), 137 Ill. 2d 1, 17, 558 N.E.2d 1194, 1201-02, respondent argues on appeal that the trial court failed to prove that she would have agreed to take the medication if she were competent. Respondent's claim hinges on the trial court's statement that he granted the petition "only with the consent of the guardian, Donna Fisher, *who has the right to*

*withdraw your* [respondent's] *consent at any time.*" (Emphasis added.) Respondent claims that the trial court erred (1) by not determining that the guardian would implement only respondent's will if respondent were competent, and (2) by not conditioning the guardian's ability to withdraw consent on a finding that the guardian's decision would reflect respondent's decision if she were competent.

The cases respondent cites all involve a guardian's ability to invoke an unconscious, vegetative person's right to terminate life support. (See *Cruzan*, 497 U.S. at 283-84, 111 L. Ed. 2d at 245-46, 110 S. Ct. at 2854-55; *Greenspan*, 137 Ill. 2d at 4-5, 558 N.E.2d at 1196; *Longeway*, 133 Ill. 2d at 36-37, 549 N.E.2d at 293-94.) Although these cases require a trial court to consider what the respondent would do if conscious and competent, section 2—107.1 of the Code does not require that the trial court determine that the guardian will exercise respondent's right to refuse medication according to respondent's wishes if respondent were competent. In other words, what respondent would do if competent is irrelevant to the inquiry. Because the legislature, not the judiciary, sets the public policy in this State, we cannot add to or supplement the statutory requirements.

To the extent that respondent's arguments raise constitutional concerns, the cases she cites still present no support for her position. Incompetency due to serious mental health problems differs significantly from incompetency due to prolonged physical unconsciousness in a vegetative state. First, the incompetency of an incompetent person in a vegetative state does not lead him to pose a danger to himself or others while the incompetency of the mental health incompetent does. Section 2—107.1 of the Code thus provides procedures for administering psychotropic medication to relieve this danger, as well as to minimize the suffering and deterioration that accompany or result from the respondent's mental illness.

Second, the choices involved in the present case hold far less drastic consequences than the choices of a guardian on behalf of a person in a vegetative state. In the present case, the guardian merely decides whether respondent will continue to receive psychotropic medication, while the guardian of a person in a vegetative coma often decides whether that person will live or die. Great care should be and is taken in the latter case to ensure that the guardian exercises the incompetent person's wishes because of the final, irreversible nature of that decision.

Third, a person who suffers from mental incompetency might *never* have had the competency to make a reasoned decision regarding medication, as opposed to a person who lives in a vegetative coma. Indeed, respondent needs the medication in order to regain her ability to make reasoned decisions by treating—instead of *removing* treatment of—the very illness that prevents her from being able to make such decisions. Placing such a condition on the guardian's authority would deny treatment to many mental incompetents who desperately need treatment, thereby negating the policy embodied in the statute that psychotropic medication can be involuntarily administered in certain rare cases.

Finally, this case does not involve respondent's right to refuse medical treatment on religious beliefs or other similar grounds. Respondent did not raise any religious objections to treatment. She objected only because she did not think she needed the medication. The treating psychiatrist and several of her relatives disagreed.

Because section 2—107.1 of the Code does not condition the administration of psychotropic medication on finding that the guardian will exercise the respondent's will if respondent were competent—and because failing to impose such a condition does not implicate the constitutional concerns raised by respondent—the trial court did not err by failing to make such a finding.

## D. *The Sufficiency of the Evidence*

Respondent finally argues that the State did not prove its case by clear and convincing evidence. In support of her argument, respondent cites several cases from out-of-State courts that interpret and apply the public policy embodied in the statutes of those other States. Because Illinois statutes embody the public policy of this State, and because these cases do not discuss the pertinent *Illinois* statutes, we will not consider these cases beyond their persuasive value.

Section 2—107.1 of the Code provides, in pertinent part, the following:

> "(d) Psychotropic medication shall not be administered to the recipient [against his will] unless it has been determined by clear and convincing evidence that all of the following factors are present:
>
> > (1) That the recipient has a serious mental illness or developmental disability.
> >
> > (2) That because of said mental illness or developmental disability, the recipient exhibits deterioration of his ability

to function, suffering, or threatening or disruptive behavior.

(3) That the illness or disability has existed for a period marked by the continuing presence of the symptoms in paragraph (2) *** or the repeated episodic occurrence of these symptoms.

(4) That the benefits of the psychotropic medication will outweigh the harm.

(5) That the recipient lacks the capacity to make a reasoned decision about the medication.

(6) That other less restrictive services have been explored and found inappropriate." (Ill. Rev. Stat. 1991, ch. 91½, par. 2—107.1(d).)

The trial court must find by clear and convincing evidence that these conditions all exist before entering an order allowing a treating doctor to administer psychotropic medication against the patient's will. (Ill. Rev. Stat. 1991, ch. 91½, par. 2—107.1(d).) On review, we give great deference to the trial court's factual findings because the court stands in the best position to weigh the credibility of all the witnesses; we therefore will not reverse a trial court's decision merely because we might have come to a different conclusion, but instead will reverse only if the trial court's decision is manifestly erroneous. (*In re Long* (1990), 203 Ill. App. 3d 357, 362-63, 561 N.E.2d 290, 294.) A trial court's decision is not manifestly erroneous unless the error is clearly evident, plain, and indisputable. *People v. Green* (1991), 218 Ill. App. 3d 71, 75, 578 N.E.2d 169, 172.

■ Respondent first challenges the trial court's finding that she lacks the capacity to make a reasoned decision about the medication. Specifically, respondent argues that the mere fact that she disagreed with the psychiatrist does not establish her inability to make a reasoned decision. She claims that she did not fail to give a reason and did not give a deluded reason for refusing the medication, but instead said that she refused the medication because it made her drowsy and made her body swell. Further, she argues that the State presented no evidence indicating that she did not understand the options available. Essentially, she argues that because she understood the options and gave a sound reason for refusing the medication, the trial court erred in finding that she lacked the ability to make a reasoned decision.

Although we agree that merely disagreeing with the treating psychiatrist does not show an inability to make a reasoned decision,

we disagree that merely presenting a purportedly nondeluded reason for refusing the medication shows that respondent has the ability to make a reasoned decision. In addition, the mere fact that respondent understood the options available does not mean that she has the ability to appropriately balance those options and make a reasoned decision. Although courts in other States have held that a refusal to accept medication must have no reasonable basis in fact before medication can be involuntarily administered (see *People v. Medina* (Colo. 1985), 705 P.2d 961, 970), the statute before us does not so require. Based on our review of the testimony considered by the trial court, we conclude that sufficient evidence was presented to support the trial court's finding that respondent lacked the ability to make a reasoned decision.

Respondent next argues that the State did not provide clear and convincing evidence that the benefits of the medication would outweigh the harm. Respondent claims that Dr. Safi merely testified that they would without providing the factual basis for that opinion. Citing *In re Cochran* (1985), 139 Ill. App. 3d 198, 200, 487 N.E.2d 389, 391, respondent argues that failing to provide a factual basis to support an assertion fails to meet the clear and convincing burden of proof. We disagree.

Dr. Safi did testify that Haldol would "decrease [respondent's] delusions and hallucinations so she would be more capable to take care of herself, at least start drinking and eating." He also testified that Haldol had some side effects that could be countered by another drug, Cogentin, that the trial court included in its order as one of the drugs that could be administered to respondent against her will. Thus, Dr. Safi did provide factual support for his opinion, even though he did not expressly and syllogistically connect these facts with his conclusion that the benefits of the medication would outweigh the harm.

Moreover, *Cochran* cited and agreed with the dissent of an opinion of this court, *In re Mazzara* (1985), 133 Ill. App. 3d 146, 478 N.E.2d 567, which held to the contrary. To the extent that *Cochran* requires an expert to provide a factual basis for every opinion, we decline to follow it and choose instead to reaffirm our earlier decision in *Mazzara*. To hold otherwise, as in *Cochran*, would unnecessarily burden expert testimony, especially in the absence of any challenge to the expert's testimony at the hearing. Dr. Safi's opinion provided *prima facie* proof at a minimum that the benefits of the medication would outweigh the harm, which the trial court could accept as clear and convincing evidence if it found Dr. Safi

sufficiently credible. Respondent could have attacked that opinion on cross-examination, but did not, leaving that *prima facie* proof intact and unrebutted.

On appeal, respondent also raises—for the first time—that the possible side effects of psychotropic drugs are far more severe than Dr. Safi indicated. (See *In re Orr* (1988), 176 Ill. App. 3d 498, 512, 531 N.E.2d 64, 74.) This court decided *Orr* under section 2—107 of the Code (Ill. Rev. Stat. 1985, ch. 91½, par. 2—107) three years before the legislature enacted section 2—107.1 of the Code. Nonetheless, respondent failed to raise this point below, and, moreover, failed to show or even mention that Haldol (the particular medication prescribed in this case) carries *any* of the many harmful side effects of psychotropic medication that we only generally described in *Orr*. Thus, we refuse to consider any additional side effects not discussed in the record.

### III. Conclusion

For the reasons stated, we affirm the trial court's order.

Affirmed.

COOK and GREEN, JJ., concur.