*In re* ANN CONNORS, A Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Ann Connors, Respondent-Appellant).

Fourth District   No. 4—93—0379

Argued October 20, 1993.—Opinion filed January 13, 1994.

John B. Lower, Jeff M. Plesko, and Penelope S. Karnes (argued), all of Guardianship & Advocacy Commission, of Anna, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

This case concerns an unusual application of the doctrine of *res judicata*. It involves successive proceedings against the same respondent alleging she was subject to admission to a mental health facility (405 ILCS 5/1—114 (West 1992)) pursuant to section 1—119 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1—119 (West 1992)). The first petition was filed in the circuit court of Sangamon County against respondent Ann Connors on March 31, 1993, seeking her involuntary admission pursuant to section 3—700 of the Code (405 ILCS 5/3—700 (West 1992)). Following a hearing on April 16, 1993, the court ruled the proof was insufficient and discharged respondent. On that same day, apparently after that ruling, a petition for emergency admission by certificate pursuant to section 3—600 of the Code (405 ILCS 5/3—600 (West 1992)) was filed in that court against respondent.

After a hearing on the second petition on April 23, 1993, the court entered an order finding respondent subject to involuntary commitment. Respondent has appealed contending first that the involuntary commitment was barred by the *res judicata* effect of the court's prior order of discharge. We agree and reverse for that reason. Respondent also maintains that the petition was not supported by the standard of proof required, other available treatment alternatives were not considered and hospitalization was not the least restrictive means of treatment. Because of our ruling on the *res judicata* issue, we need not consider the latter contentions of respondent.

The supreme court recently described the general principles of *res judicata* in the following words:

"Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies. (*Kinzer v. City of Chicago* (1989), 128 Ill. 2d 437, 446[, 539 N.E.2d 1216, 1220]; *Catlett v. Novak* (1987), 116 Ill. 2d 63[, 506 N.E.2d 586]; *People v. Kidd* (1947), 398 Ill. 405, 408[, 75 N.E.2d 851, 853].) That judgment is an absolute bar to subsequent actions involving the same claims or demands by the same parties or their privies. (*Kinzer*[, 128 Ill. 2d at 446, 539 N.E.2d at 1220]; *Catlett*[, 116 Ill. 2d at 67, 506 N.E.2d at 588]; [*Kidd*, 398 Ill. at 408, 75 N.E.2d at 853-54].) The doctrine extends not only to what actually was decided in the original action but also to matters which could have been decided in that suit. *La Salle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 529[, 337 N.E.2d 19, 22]." *People ex rel. Burris v. Progressive Land Developers, Inc.* (1992), 151 Ill. 2d 285, 294, 602 N.E.2d 820, 824-25.

■ The People's first contention against *res judicata* being applicable here arises from the fact that a local chief of police was the petitioner in the first case while Tom Connors, respondent's son, brought the second petition. The People contend that the "same parties" requirement for *res judicata* is not present. However, section 3—101 of the Code refers to the responsibility of the State's Attorney to "represent the [P]eople of the State of Illinois in court proceedings" of the nature involved here (405 ILCS 5/3—101 (West 1992)), thus indicating that the People are a party to proceedings for admissions to mental health proceedings. (See *People v. R.C.* (1988), 175 Ill. App. 3d 163, 529 N.E.2d 756.) As the People were a party adverse to respondent in the first case and also in the case on review, she can assert a *res judicata* defense if all the other aspects of *res judicata* are present. No contention is made that all the parties to the former case must have been brought into the second case. Any rule that *res judicata* is not applicable here because of a difference of parties would enable successive petitions for involuntary admission to be filed against a respondent *ad infinitum* as long as a new petitioner signed each new petition.

■ Second, the People maintain that the cause of action is different because the first petition merely sought an involuntary admission pursuant to section 3—700 of the Code while the second petition sought an involuntary admission under the emergency provision of section 3—600 of the Code whereby the respondent can be hospitalized before a hearing under the provisions of section 3—603 of the

Code (405 ILCS 5/3—603 (West 1992)). Nevertheless, each petition was for an involuntary admission being imposed upon the respondent because she was a person "who is mentally ill and who because of [her] illness is unable to provide for [her] basic physical needs so as to guard [herself] from serious harm" as set forth in section 1—119(2) of the Code. 405 ILCS 5/1—119(2) (West 1992).

The first petition also alleged that respondent was a person in need of involuntary admission because she was, due to her mental illness, "reasonably expected to inflict serious physical harm upon [herself] or another in the near future" as set forth in section 1—119(1) of the Code (405 ILCS 5/1—119(1) (West 1992)). A finding that respondent was not shown to be in need of involuntary admission in the first proceeding was a determination that neither the conditions required by subsection (1) nor (2) of section 1—119 of the Code existed. Unlike the first petition, the second petition maintained that respondent was in need of immediate admission prior to hearing. However, if respondent was not in need of any involuntary admission, she could not have been in need of emergency admission.

As we subsequently explain, some evidence was presented at the second hearing which was not presented at the first hearing, but this evidence concerned a matter which had occurred prior to the first hearing. As this evidence could have been presented at the first hearing, it cannot be the basis for a different decision after the second hearing. *Progressive Land Developers, Inc.*, 151 Ill. 2d at 294-95, 602 N.E.2d at 825.

Nothing we have stated is intended to indicate that once a respondent is discharged in a proceeding for involuntary admission, that respondent is immune from further proceedings to bring about an involuntary admission. Rather, we are holding that some change of circumstances must be shown before a subsequent involuntary admission is permissible. The highly technical language of section 24 of the Restatement (Second) of Judgments explains the rule which we deem applicable here in the manner as follows:

"(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the

facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments §24, at 196 (1982).

Comment *f* of this section explains when a change in circumstances can provide the basis for a second action not precluded by the first:

> "*Change of circumstances.* Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first. \*\*\* Where important human values—such as the lawfulness of a continuing personal *disability or restraint*—are at stake, even a slight change of circumstances may afford a sufficient basis for concluding *that a second action may be brought.*" (Emphasis added.) Restatement (Second) of Judgments §24, Comment *f*, at 203 (1982).

The application of *res judicata* principles in regard to successive petitions for involuntary admissions under the Code is analogous to its application to successive requests concerning custody of children in matrimonial dissolution proceedings. The supreme court once stated in that regard as follows:

> "After a divorce decree in this State the custody of the children is always subject to the order of the court which enters the decree and may be changed from time to time as the best interests of the children demand. The decree is *res judicata* as to *the facts which existed at the time it was entered* but not as to facts arising thereafter." (Emphasis added.) (*Nye v. Nye* (1952), 411 Ill. 408, 416, 105 N.E.2d 300, 304.)

The above rule in regard to the *res judicata* effect of decrees in regard to custody of children is codified in section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/610(b) (West 1992)).

Various witnesses testified at the hearings on April 16, 1993, and April 23, 1993. At the first hearing the medical testimony was presented by Dr. Philipp Bornstein, a psychiatrist who had examined respondent and medical records concerning her activities. He also took into consideration the testimony he had heard from lay witnesses. He diagnosed respondent as having a "bipolar disorder," manic type with delusions. He further stated an opinion that, if respondent continued

to have delusions, she "could" be reasonably expected "to inflict serious physical harm upon herself or someone else in the near future."

Dr. Philip Woerner, also a psychiatrist, gave the only medical testimony at the second hearing. He had examined the respondent on April 22, 1993, which was after the entry of the order resulting from the first hearing. He also gave an opinion that respondent was suffering from a "bipolar affective disorder." He also stated that he questioned whether she could care for her basic physical needs and that she had been delusional and needed treatment. Nothing in Dr. Woerner's testimony indicated his opinion was based upon anything which had occurred after the first hearing. Petitioner Tom Connors testified at both hearings but nothing of significance that he testified about had occurred after the first hearing. Respondent, who had not testified at the first hearing, testified at the second hearing but her significant testimony also concerned events taking place at or before the first hearing.

Accordingly, no change of circumstances from the situation at the first hearing was shown. The nature of the questioning was such that the prosecutor was, apparently, unaware of the need to show a change of circumstances. We recognize the difficulty faced by the People, the court and the mental health facilities in handling a large number of petitions and marshalling the required evidence in proceedings for admission. However, the doctrine of *res judicata* is applicable, and the prosecutor is not entitled to another chance when he or she fails to marshal sufficient evidence for the hearing on the petition. When the prosecutor finds need, soon after the denial of a petition, to proceed again, he or she must be prepared to introduce evidence of subsequent conduct or subsequent condition which would justify allowing the requested relief.

As no change in circumstance was shown here, we reverse.

Reversed.

KNECHT and LUND, JJ., concur.