*In re* BRAD ISRAEL, Alleged to be a Person in Need of Involuntary Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. Brad Israel, Respondent-Appellant).

Second District    No. 2—95—0623

Opinion filed February 28, 1996.

26

DOYLE, J., dissenting.

William E. Coffin and Teresa L. Berge, both of Guardianship & Advocacy Commission, of Rockford, and John B. Lower, of Guardianship & Advocacy Commission, of Chicago, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:
Respondent, Brad Israel, appeals the order of the circuit court of

Winnebago County which granted the State's motion to involuntarily administer psychotropic medication to respondent. We reverse.

On February 6, 1995, the State filed a petition to involuntarily administer psychotropic drugs to respondent pursuant to section 2—107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2—107.1 (West 1994)). After hearing extensive testimony, including respondent's own testimony, the court denied the petition on the grounds that the State had failed to prove by clear and convincing evidence that (1) respondent lacked the capacity to make a reasoned decision regarding the medication; and (2) the benefits of the medication would outweigh the harm.

On April 11, 1995, the State again filed a petition seeking to involuntarily administer psychotropic drugs to respondent. The trial court dismissed that petition on the grounds of *res judicata*.

On April 18, 1995, the State filed another petition for the involuntary administration of psychotropic drugs, which petition is the subject of the present appeal. Respondent filed a motion to dismiss on the grounds of *res judicata*, collateral estoppel, substituted judgment, and lack of refusal to take a psychotropic medication. The court denied respondent's motion, and the matter proceeded to trial.

The State's first witness was Scott Reese, an employee of the Singer Mental Health Facility (facility), where respondent is currently residing. Reese testified that on May 16, 1995, he was working at the facility. Reese observed an incident in which respondent and a female patient bumped into each other. Reese indicated that respondent grabbed the female patient and struck her with his hand. Reese testified that the female patient had a red mark on her forearm and cheek from respondent's actions.

The State then called Darleen Brunke, a registered nurse at the facility. She testified that on March 30, 1995, respondent had indicated that he was feeling better because his head and neck were now connected.

The next witness to testify was Diane Clevenger, a licensed practical nurse at the facility. She testified that on April 10, 1995, the facility staff had requested that respondent move away from a table. Respondent refused, whereupon Clevenger pulled his chair back. Respondent then accused Clevenger of assaulting him, and he said he was going to call his lawyer and sue her. Clevenger also indicated that respondent told her that he had been at the facility since he was 14 years old and that he had been cut several times between his legs and had been sexually assaulted.

Clevenger also testified that on April 13, 1995, she overheard a

telephone conversation between respondent and an unknown party. Clevenger indicated that respondent again indicated that he had been in the facility for 14 years, had been cut on the legs several times, and had been sexually assaulted. Respondent also indicated that his genitals had been cut off but that God had reattached them.

She further testified that on April 11 or April 12, 1995, respondent refused to get out of bed. When she and other staff members entered his room to get him out of bed, respondent accused them of assaulting him. He further indicated that he was going to have them charged with an assault and battery.

The next witness to testify was Dr. Kamal Modir, respondent's psychiatrist. Dr. Modir testified that, while respondent was suffering from a mental illness, he was unable to specifically diagnose the exact type of mental illness which was afflicting respondent. Dr. Modir testified that respondent displayed paranoid thoughts and hostility. Dr. Modir also testified that respondent often would become explosive and aggressive and continued to exhibit delusional thought patterns.

Dr. Modir testified that, in the past, respondent had been cooperative with his treatment and had been functioning more rationally. However, Dr. Modir testified that lately respondent had become uncooperative and that the incidents of respondent's inappropriate behavior were increasing.

Dr. Modir indicated that the two psychotropic drugs which he was seeking to administer to respondent were Risperdal and Haldol. Dr. Modir testified that respondent would greatly benefit from these drugs in that he would become more rational in his thinking, his delusional ideation would decrease, and he would be much more rational in his relationships with other people. Dr. Modir indicated that, if respondent were to take these medications, it might be possible that he would be able to function outside of the facility.

Dr. Modir did admit that there could be some harmful side effects from the medications. Dr. Modir indicated that there were fewer side effects associated with Risperdal than with Haldol. Possible side effects which might be associated with Risperdal include tardive dyskinesia and neuroleptic malignant syndrome. Possible side effects which are associated with Haldol also include tardive dyskinesia, neuroleptic malignant syndrome, and insomnia. Dr. Modir testified that the chances of respondent experiencing these side effects were minimal considering the low dose which Dr. Modir was seeking to administer.

Respondent had previously been on both Haldol and Risperdal. There is, however, a discrepancy as to whether respondent had actu-

ally been taking the Risperdal when it was given to him. During the period of time when respondent was allegedly taking the Risperdal, he complained that he had trouble breathing, and respondent did receive emergency medical attention. Respondent was given Cogentin, a medication which is used to combat the side effects of Risperdal. However, when respondent's blood was tested, there was no evidence of Risperdal in respondent's system, which led Dr. Modir to conclude that respondent had not been taking Risperdal as prescribed.

Respondent also had previously been on Haldol, but had also complained of side effects. Both drugs were discontinued in light of respondent's complaints. Respondent had also been treated for lithium toxicity several years previous.

Dr. Modir testified that he explained the benefits and possible side effects of the medications to respondent and that respondent refused either medication. Dr. Modir indicated that respondent did not feel that his previous experience with both Risperdal and Haldol had been beneficial. Respondent further indicated that the risk of the side effects of the medication was unacceptable to him.

The court then inquired as to Dr. Modir's basis for concluding that respondent's reason for refusing the medications was irrational. Dr. Modir responded that respondent did not believe he was mentally ill and was under the impression that everyone was against him. While Dr. Modir did admit that respondent had complained of side effects in the past, because respondent had not been taking the Risperdal that was given to him, it was Dr. Modir's opinion that any problems which respondent may have experienced were not caused by the Risperdal. Dr. Modir indicated that while respondent was taking the Haldol he did not observe that respondent experienced any side effects from the Haldol.

Lastly, the State called Mark Young, a registered nurse at the facility. Young testified that on April 11, 1995, respondent assaulted another patient at the facility, hitting the patient in the face three times. Young did not, however, observe who was the initial aggressor in the confrontation. The State then rested. Respondent did not call any witnesses, nor was respondent present to testify.

The court then presented its findings. The court first found that there had been a sufficient change in circumstances to allow the State to present another petition. The court found that sufficient evidence was presented to show that respondent had a serious mental illness. The court also found that sufficient evidence was presented to demonstrate that respondent's mental illness resulted in a deterioration in his ability to function and that this deterioration has existed for a sufficient period of time so as to satisfy section 2—107.1(d)(3) of

the Code (405 ILCS 5/2—107.1(d)(3) (West 1994)). The court found that the State had demonstrated that less restrictive methods would not be effective in treating respondent.

The court indicated that the two key issues in the case at bar were whether the benefits of the psychotropic medications outweighed the medications' possible harm and whether respondent lacked the capacity to make a reasoned decision concerning the medications. The court found that substantial evidence had been presented concerning the benefits of the medications. The court recognized that the medications could have some potentially harmful side effects, but found that the benefits of the medications outweighed their possible harm.

The court noted that Dr. Modir had testified that the basis for respondent's refusal to take the medications was not based on actual facts, but, rather, was based "on a kind of paranoia." Because Dr. Modir had testified that there was no rational basis for respondent's complaints concerning the side effects of the medications, especially in light of the fact that there was no evidence of Risperdal in respondent's system when he was complaining of the Risperdal's side effects, the court found that respondent's reason for refusing the medications was not rational. Thus, the court found that respondent lacked the capacity to make a reasoned decision concerning the medications.

The trial court entered an order for the involuntary administration of psychotropic medication. Respondent moved to stay the order pending appeal, which motion was denied. This timely appeal followed.

On appeal, respondent contends that the trial court erred in denying respondent's motion to dismiss the petition on the grounds of lack of subject matter jurisdiction, *res judicata*, and collateral estoppel. Respondent also contends that the trial court erred in refusing to apply the substituted judgment standard and that the trial court's order which allowed the State to involuntarily administer psychotropic medication was against the manifest weight of the evidence.

Respondent first argues that the trial court lacked subject matter jurisdiction over the petition because respondent consented to take Valium, a psychotropic medication. Respondent argues that, because respondent was voluntarily taking Valium, he was not refusing to take a psychotropic medication and, thus, the trial court did not have jurisdiction over the petition.

■ While respondent raises an interesting argument, it does not follow logically that just because a person consents to take one type

of medication, the State is precluded from seeking to administer another type of medication. Section 2—107.1 of the Code provides that psychotropic medication may be administered to a recipient of services against his will so long as the standards and procedures of this section are followed. 405 ILCS 5/2—107.1 (West 1994).

Dr. Modir testified that respondent was taking Valium in order to treat his anxiety and to calm him down. The Valium was not being used for behavioral modification or management. The only medications which would treat respondent's delusions and paranoia are the Haldol and Risperdal.

Respondent alleges that merely because a patient disagrees with a doctor concerning a specific medication, the State should not be able to resort to the judicial system to resolve such a dispute. However, as noted above, Valium, Risperdal, and Haldol are very different medications in that they treat very different problems. As such, the State is not precluded from filing a petition seeking to administer another type of medication just because respondent consented to take one type of medication.

Respondent next argues that the trial court erred in refusing to dismiss the petition on the grounds of *res judicata.* As noted above, on February 6, 1995, the State filed a petition seeking to administer psychotropic medication to respondent. This motion was denied, and on April 11, 1995, another petition was filed. This petition was dismissed on the grounds of *res judicata.* On April 18, 1995, the State again filed a petition seeking to administer psychotropic medication to respondent. Respondent argues that this petition also should be dismissed pursuant to a theory of *res judicata.*

■ Pursuant to the doctrine of *res judicata,* a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies. *In re Connors,* 255 Ill. App. 3d 781, 783 (1994). The doctrine extends not only to what actually was decided in the original action but also to those matters which could have been decided in the previous action. *Connors,* 255 Ill. App. 3d at 783.

In *Connors,* the State filed a petition to involuntarily admit a person into a mental health facility. *Connors,* 255 Ill. App. 3d at 782. The petition was dismissed, and the State filed a second petition. The court concluded that the only evidence presented at the second hearing concerned incidents which had occurred prior to the first hearing. *Connors,* 255 Ill. App. 3d at 784. Thus, the trial court concluded that the second petition was barred by the doctrine of *res judicata* and ordered the petition dismissed. *Connors,* 255 Ill. App. 3d at 786.

■ The court did, however, indicate that, if a change in circum-

stances had been shown, the State would have been able to file a second petition. *Connors*, 255 Ill. App. 3d at 784. In the case at bar, the State presented evidence of several episodes involving respondent and his inability to interact with the facility staff and patients which had occurred after the hearing on the first petition. The trial court specifically found that there had been a change in circumstances which allowed the State to file another petition. We agree and find that the State's petition was not barred by *res judicata*.

■ Respondent next argues that the trial court erred in refusing to dismiss the State's petition based on collateral estoppel. While *res judicata* is designed to bar the relitigation of claims, collateral estoppel bars the relitigation of particular facts or issues decided in a prior adjudication between the same parties in a different cause of action. *Metro Utility Co. v. Illinois Commerce Comm'n*, 262 Ill. App. 3d 266, 271 (1994). In order to prevail on a claim of collateral estoppel, the issue of fact decided in the first case must be identical to the issue of fact decided in the present case. *Housing Authority v. YMCA*, 101 Ill. 2d 246, 252 (1984). Further, the factual issue must have actually and necessarily been litigated and determined in the first case. *Housing Authority*, 101 Ill. 2d at 252.

■ Respondent argues that the trial court had already determined that the benefits of Risperdal and Haldol were outweighed by the risks of both medications. Respondent further argues that the issue of whether respondent had the capacity to make a reasoned decision concerning the medications had also already been determined by the trial court in the February hearing. Thus, respondent argues that the trial court was barred from revisiting these issues in the present proceeding.

The trial court's February order found that the State had failed to prove by clear and convincing evidence that the benefits of the medications outweighed the medications' harm and that respondent lacked the capacity to make a reasoned decision concerning the medications. The court did not make a finding that the harm of the medications outweighed the medications' benefits, nor did the trial court make a determination that respondent had the capacity to make a reasoned decision concerning the medications. Because the trial court did not actually determine that the medications' harm outweighed their benefits or that respondent had the capacity to make a reasoned decision, the trial court is not barred from revisiting these issues.

Respondent next argues that the trial court erred in failing to apply the "substituted judgment" standard. Respondent argues that when making decisions for incompetent persons, where there is evidence of the person's competent wishes, the trial court should utilize

the "substituted judgment" standard. The "substituted judgment" standard is defined as depending upon the subjective attitudes of the recipient while the recipient is competent. *In re C.E.*, 161 Ill. 2d 200, 221 (1994). Respondent argues that because respondent had indicated during the February hearing that he did not wish to take the medications, the court was required to respect respondent's competent wishes.

■ Section 2—107.1 does not indicate whether a trial court should utilize the objective "best interests" or the subjective "substituted judgment" test. 405 ILCS 5/2—107.1 (West 1994). However, the supreme court has indicated that the trial court can consider the "substituted judgment" of the patient and should, in fact, respect the competent wishes expressed by the mental health patient. *C.E.*, 161 Ill. 2d at 221. However, where the patient's competent wishes have not been clearly proven, the court should be guided by the more objective "best interests" test. *C.E.*, 161 Ill. 2d at 221.

In the case at bar, the trial court specifically considered respondent's wishes concerning the medications. The court noted that respondent had raised numerous objections to the medications, but went on to conclude that respondent's best interests would be served by the administration of the medications.

Respondent argues, however, that the court was required to follow respondent's wishes which were made known at the February hearing because there was clear evidence of respondent's competent wishes.

■ At the February hearing, evidence was presented by the State which indicated that respondent was suffering from a mental illness and was suffering from delusions. Further, evidence was presented which indicated that respondent's objections concerning the medications were not rational. While the court did determine that the State had not met its burden, such a finding was not sufficient to render respondent's testimony "clear" evidence of respondent's competent wishes concerning the administration of medication. See *In re Schaap*, 274 Ill. App. 3d 497, 502 (1995).

Respondent next argues that the decision of the trial court which allowed the State's petition was against the manifest weight of the evidence. Section 2—107.1 of the Code provides that psychotropic medication shall not be administered to the recipient unless it has been determined that all of the following factors are present:

> "(1) That the recipient has a serious mental illness or developmental disability.
>
> (2) That because of said mental illness or developmental disability, the recipient exhibits deterioration of his ability to function, suffering, or threatening or disruptive behavior.

(3) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in paragraph (2) of subsection (d) of this Section or the repeated episodic occurrence of these symptoms.

(4) That the benefits of the psychotropic medication will outweigh the harm.

(5) That the recipient lacks the capacity to make a reasoned decision about the medication.

(6) That other less restrictive services have been explored and found inappropriate." 405 ILCS 5/2—107.1(d) (West 1994).

Respondent specifically argues that the State failed to prove by clear and convincing evidence that he lacked the capacity to make a reasoned decision about the medications or that the benefits of the medications would outweigh their harm.

Clear and convincing evidence is defined as the quantum of proof which leaves no reasonable doubt in the mind of the fact finder as to the veracity of the proposition in question. *Bazydlo v. Volant*, 164 Ill. 2d 207, 213 (1995). As a reviewing court, we give great deference to the trial court's factual findings because the court stands in the best position to weigh the credibility of all the witnesses; thus, we will disturb the trial court's decision only if it is manifestly erroneous. *In re Jeffers*, 239 Ill. App. 3d 29, 35 (1992). However, we also note that respondent was not present and did not testify before the trial court and, thus, the trial court was unable to evaluate and judge respondent's credibility.

We will begin by addressing respondent's argument that the State did not prove by clear and convincing evidence that the benefits of the medications outweighed the harm. Respondent argues that there was extensive evidence before the trial court as to the possible serious side effects of both Haldol and Risperdal. Respondent further notes that psychotropic medication is less effective where the recipient of the medication does not agree to accept the medication. *C.E.*, 161 Ill. 2d at 220.

Dr. Modir testified, however, that the benefits in the case at bar would substantially outweigh any possible negative effects of the medications. While we recognize that there are potential side effects of psychotropic medication, there is little dispute that these medications can be the most effective means of treating and controlling a mental illness. See *Washington v. Harper*, 494 U.S. 210, 226, 108 L. Ed. 2d 178, 201, 110 S. Ct. 1028, 1039 (1990). Dr. Modir also testified that, in light of the low dosages which were going to be administered to respondent, the possibility of negative side effects was significantly diminished.

We also recognize that respondent had suffered a reaction to the lithium medication which required hospitalization. Respondent also was hospitalized after complaining about his reaction to Risperdal. However, evidence was presented that, at the time that respondent was complaining about the Risperdal's side effects, he did not have any trace of the medication in his system. After having examined all the evidence presented in the case at bar, we cannot say that the trial court's determination that the benefits of the medications outweighed their harm was clearly erroneous.

We turn now to respondent's contention that the trial court's determination that respondent lacked the capacity to make a reasoned decision concerning the medications was in error. An individual has the capacity to make treatment decisions for himself when, based upon conveyed information concerning the risks and benefits of the proposed treatment and reasonable alternatives to treatment, he makes a rational choice to either accept or refuse the treatment. *In re Orr*, 176 Ill. App. 3d 498, 512-13 (1988). Illinois courts, however, have not articulated specific standards or guidelines which the courts should consider when determining if a person has the capacity to make a reasoned decision concerning the administration of psychotropic medication.

However, courts in other jurisdictions have addressed this problem and have formulated a list of factors which a court can consider in evaluating a person's capacity to consent or refuse treatment. A recent Wisconsin decision indicated that a court should consider the following factors:

"(a) Whether the patient is able to identify the type of recommended medication or treatment;

(b) whether the patient has previously received the type of medication or treatment at issue;

(c) if the patient has received similar treatment in the past, whether he or she can describe what happened as a result and how the effects were beneficial or harmful;

(d) if the patient has not been similarly treated in the past, whether he or she can identify the risks and benefits associated with the recommended medication or treatment; and

(e) whether the patient holds any patently false beliefs about the recommended medication or treatment which would prevent an understanding of legitimate risks and benefits." *In re Virgil D.*, 189 Wis. 2d 1, 15, 524 N.W.2d 894, 899-90 (1994).

A New York court also formulated a set of factors which courts should consider in evaluating a person's capacity. These factors are:

"(1) [T]he person's knowledge that he has a choice to make;

(2) the patient's ability to understand the available options, their advantages and disadvantages;

(3) the patient's cognitive capacity to consider the relevant factors;

(4) the absence of any interfering pathologic perception or belief, such as a delusion concerning the decision;

(5) the absence of any interfering emotional state, such as severe manic depression, euphoria or emotional disability;

(6) the absence of any interfering pathological motivational pressure;

(7) the absence of any interfering pathological relationship, such as the conviction of helpless dependency on another person; [and]

(8) an awareness of how others view the decision, the general social attitude toward the choices and an understanding of his reason for deviating from that attitude if he does." *Rivers v. Katz*, 67 N.Y.2d 485, 498 n.7, 495 N.E.2d 337, 344 n.7, 504 N.Y.S.2d 74, 81 n.7 (1986).

■ We decline to adopt in whole either of these lists of factors. Rather, we find that a court should consider the following factors in determining whether an individual has the capacity to make a reasoned decision concerning the administration of psychotropic medication:

(1) The person's knowledge that he has a choice to make;

(2) The person's ability to understand the available options, their advantages and disadvantages;

(3) Whether the commitment is voluntary or involuntary;

(4) Whether the person has previously received the type of medication or treatment at issue;

(5) If the person has received similar treatment in the past, whether he can describe what happened as a result and how the effects were beneficial or harmful; and

(6) The absence of any interfering pathologic perceptions or beliefs or interfering emotional states which might prevent an understanding of legitimate risks and benefits.

None of these enumerated factors should be considered dispositive, and a court should consider any other relevant factors which it deems might be present.

■ We now consider respondent's argument in light of the above-listed factors. First, there was no evidence presented which would indicate that respondent was unaware that he had a choice to make. Dr. Modir testified that he specifically discussed the benefits and possible side effects with respondent and that respondent had indicated that he did not wish to take the medications. Further, on previous occasions, respondent had consented to the medications, and when re-

spondent indicated he no longer wished to consent to the medications, they were discontinued.

Second, it would appear that respondent was able to differentiate between the available options, as well as the various advantages and disadvantages of each. Dr. Modir testified that respondent was able to differentiate between the different medications. While there is no evidence that respondent acknowledged that the medications might have had a positive effect, evidence was presented which clearly indicated that respondent recognized the potential adverse side effects of each of the medications. While there is some discrepancy as to whether respondent had actually taken the Risperdal when it had previously been prescribed, respondent was aware of both medications' potential side effects.

Third, respondent was voluntarily in the Singer facility. Respondent apparently agreed to reside at the Singer facility and seek treatment. He consented to take Valium, a psychotropic drug which apparently does not have significant side effects. It was only when the State sought to administer other drugs with possible serious side effects that respondent had objected.

Fourth, conflicting evidence was presented as to whether respondent had received Haldol or Risperdal in the past. There was evidence presented that respondent had taken Haldol in the past with no significant side effects. As to the Risperdal, respondent alleges that he had a severe reaction to the Risperdal in the past. When respondent was tested for the presence of Risperdal in his system, no traces were found, which led Dr. Modir to conclude that respondent had not been taking the medication. However, no evidence was presented as to how long the Risperdal would have remained in respondent's system, nor was Dr. Modir able to conclusively establish when respondent's blood had actually been tested.

Fifth, it is unclear whether respondent was able to identify the risks and benefits associated with the Risperdal because it is unclear whether he had actually taken the medication in the past. Respondent clearly identified the fact that he was hospitalized with breathing problems, which problems, in respondent's opinion, were a result of the administration of Risperdal. Respondent clearly was not able to identify any benefits which might have been associated with either medication.

Sixth, Dr. Modir testified that respondent's delusions and paranoia affected his decision-making ability. Dr. Modir indicated that, because respondent had not been taking the Risperdal at the time when he claimed he suffered the adverse side effects, respondent's delusions rendered the basis of his refusal to take the Risperdal irrational.

After considering each of the above factors, we find that the trial court's decision that respondent lacked the capacity to make a reasoned decision concerning the medications at issue to have been against the manifest weight of the evidence. While respondent was clearly suffering from a mental illness, he had rationally explained the basis for his refusal to take the medications.

We acknowledge that there are many situations in which the administration of drugs to an individual is clearly in that individual's best interests. *C.E.*, 161 Ill. 2d at 217. However, there is also a competing constitutionally protected liberty interest to refuse the administration of psychotropic drugs. *C.E.*, 161 Ill. 2d at 214. We believe that the factors enumerated in the case at bar adequately balance each of these competing interests. In the case at bar, the State did not sustain its burden of showing by clear and convincing evidence that respondent lacked the capacity to make a reasoned decision.

The order of the circuit court of Winnebago County which ordered that respondent be administered psychotropic drugs is reversed.

Reversed.

McLAREN, P.J., concurs.

JUSTICE DOYLE, dissenting:

I fully agree with nearly every aspect of the majority opinion; however, I respectfully disagree that an application of the recognized factors to the circumstances of this case indicates the trial court's determination that respondent lacked the capacity to make a reasonable decision concerning medication is against the manifest weight of the evidence.

In my view, the trial court correctly identified a central consideration evident from the testimony, *i.e.*, evidence of interfering pathological perceptions or beliefs which might prevent an understanding of legitimate risks and benefits. (Factor No. 6 in majority's discussion.) This factor appears to directly complement factor No. 2, the person's ability to understand the available options, their advantages and disadvantages.

There was uncontradicted psychiatric testimony that respondent was afflicted with a serious mental illness which deprived him of the capacity to make a reasoned decision. It is undisputed that his reasoning was hampered by delusional thought patterns and paranoid thoughts and that respondent often became explosive and aggressive. His condition was deteriorating, and he was becoming more unruly, attacking other patients, etc. The expert opinion describing respon-

40

dent's delusional thinking was corroborated by nurses' testimony that he said God had attached his previously severed genitals and that respondent felt better at times when his head was connected to his neck.

I recognize that the fact of mental illness alone will not preclude accepting a patient's decision on the question of psychotropic medication. However, I do not believe it was against the manifest weight of the evidence, here, for the trial court to have concluded, consistent with the expert opinion, that respondent's thought processes were so disrupted by his mental illness as to deprive him of the capacity to make a rather sophisticated decision concerning medication.

Although I agree with the majority that a court must consider and weigh all six of the enumerated factors, I believe that the existence of severe delusional and erratic thinking, as here, can weigh so heavily as to guide the trial court in its determination that the administration of the medication is necessary and warranted. I would affirm the trial court's judgment.