No. 2--07--0379          Filed:  4-16-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re LISA P., Alleged to be a Person Subject to Involuntary Treatment | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| | | No. 06--MH--146 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Lisa P., Respondent-Appellant). | | Honorable James C. Hallock, Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Respondent, Lisa P., was found unfit to stand trial on a felony charge not specified in the record.  She was transferred to the Elgin Mental Health Center (EMHC), where Dr. Mirella Susnjar treated her.  Dr. Susnjar subsequently petitioned to involuntarily administer psychotropic medication to respondent pursuant to section 2--107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2--107.1 (West 2006)).  The trial court granted the petition, and respondent appealed.  On appeal, respondent contends that the State failed to prove that she is a person subject to the involuntary administration of psychotropic medication.  We affirm.

The hearing on the petition to involuntarily administer psychotropic medication to respondent took place on February 16, 2007.  At that hearing, Dr. Susnjar testified that respondent was admitted to the EMHC on August 31, 2006.  When respondent was admitted, she could not accept that she had been put in jail and sent to the EMHC for treatment.  Respondent rambled on incoherently about

her situation, believing that the government was against her because she said or wrote something about President Bush.

During her testimony, Dr. Susnjar described various incidents at the EMHC that involved respondent and warranted staff intervention. On September 4, 2006, respondent's rights were restricted and medication was given to her because she was yelling, singing, and swearing. Respondent threatened to hit the nurse who was attempting to treat her, and, as a result, respondent was put in leather restraints for one hour. The medication respondent was given caused her to be much calmer the following day. On October 4, 2006, respondent's rights were again restricted because she insulted a nurse, was singing about the country, and insisted that she was going to contact the police about her court-ordered treatment. In addition to restricting her rights, Dr. Susnjar gave respondent medication. Respondent was not violent after she was medicated. On October 24, 2006, respondent was again given medication to prevent violent outbursts. The next day, respondent appeared much calmer. On November 2, 2006, respondent phoned doctors at Kane County Diagnostic and harassed them. Dr. Susnjar intervened, restricting respondent's phone privileges.

Aside from medicating respondent on September 4, October 4, and October 24, 2006, Dr. Susnjar prescribed other medications to respondent to treat her illness. Respondent sporadically agreed to take an antidepressant and a very low dose of a neuroleptic. Dr. Susnjar later specified that respondent took Celexa and Risperdal. Dr. Susnjar was not sure whether respondent was taking the medication she was given, and, even if she was ingesting the medication, Dr. Susnjar believed that the very low dosages of the medication were not enough to treat respondent's illness. Dr. Susnjar believed that respondent's random taking of medication was proof of her inability to understand her illness and seek appropriate treatment. Dr. Susnjar testified that respondent may have agreed to take

medication sporadically in the past so that she could claim that she was suffering from side effects. When Dr. Susnjar conducted her daily observations of respondent, she never saw that respondent was suffering from any side effects. Moreover, Dr. Susnjar believed that respondent may have consented to taking medication when she was more lucid.

During respondent's stay at the EMHC, Dr. Susnjar performed a psychiatric examination of her, which consisted of talking with her, speaking with the staff who treated her, and reviewing her treatment records for her current and two previous admissions. According to her treatment records, respondent took Seroquel in the past, but she discontinued this treatment when, among other things, she was arrested. Based on the psychiatric examination, Dr. Susnjar diagnosed respondent as suffering from schizo-affective disorder of the bipolar type, which Dr. Susnjar testified is a serious illness. This illness caused respondent to exhibit rage and feel paranoid even when her mood was stable.

Dr. Susnjar stated that respondent's illness had caused her to experience a deterioration in her ability to function. In reaching that conclusion, Dr. Susnjar noted that seven years ago respondent was very successful. She had graduated from Northwestern University, she was able to work as a paralegal, and she owned a condominium. Now, respondent was homeless, and she had been arrested for committing many felonies. Moreover, Dr. Susnjar testified that respondent's mental illness had caused her to suffer. For example, respondent believed that her entire family was "after [her]," that the world was evil, and that she was a victim. Respondent also exhibited threatening behavior, such as threatening to initiate legal action, getting "into your face," and making "you feel that you need to walk on egg shells 24 hours [a day] because [her anger] will escalate and [she will] explode." Despite her threats, respondent had not physically harmed anyone.

Based on her interaction with respondent and her evaluation, Dr. Susnjar concluded that respondent lacked the capacity to make a decision about taking psychotropic medication. Dr. Susnjar testified that respondent's illness caused her to distort reality and prevented her from understanding her problems. Dr. Susnjar testified that respondent's illness prevented her from understanding her available options and their advantages and disadvantages. Dr. Susnjar believed to a reasonable degree of psychiatric certainty that the benefits of respondent taking psychotropic medication clearly outweighed the possible harm, and she sought to administer Risperdal Consta, lorazepam, Zydis, and quetiapine.

Respondent testified that she opposed the petition to administer psychotropic medication because it violated her constitutional rights. Although respondent had taken some of the medication that Dr. Susnjar wanted to administer, respondent did not wish to take additional medication because she did not believe that she had a mental illness, and, thus, she claimed that she did not belong at the EMHC. Respondent believed that her illness was neurological. Respondent testified that, when she took the medication prescribed to her, she suffered from insomnia and felt light-headed, dizzy, and nauseous.

When asked about whether she had exhibited threatening behavior, respondent stated that Dr. Susnjar perceives people as threatening when they assert their rights. Respondent acknowledged that she had called a few organizations to complain about the condition of the EMHC, the treatment the patients receive, fraud perpetrated at the EMHC, and the staff's misconduct. Respondent did not believe that she had caused the staff at the EMHC to "walk on egg shells" when they were around her, noting that she had a good rapport with several staff members, including Dr. Susnjar.

The trial court granted the petition to involuntarily administer psychotropic medication and authorized the administration of certain designated medications for a period of 90 days. In so doing, the trial court found Dr. Susnjar's testimony very credible. The trial court noted that respondent either was not ingesting the medication she was given or was not given a dosage of medicine that was sufficient to treat her illness. The trial court then found that respondent had exhibited a deterioration in her ability to function and that she was suffering. In denying respondent's motion to reconsider, the trial judge commented that, "every time [he had] ever seen this [respondent], [he] thought she was suffering." Respondent timely appealed.

On appeal, respondent argues that the State failed to prove that she is a person subject to the involuntary administration of psychotropic medication. Before addressing the merits, we note that the issue is moot because the 90-day period covered by the trial court's order has already expired. In re Robert S., 213 Ill. 2d 30, 45 (2004). Nevertheless, we choose to consider the issue pursuant to the public-interest exception to the mootness doctrine. Robert S., 213 Ill. 2d at 45 (public-interest exception to mootness doctrine applies if the question raised is of a public nature, an authoritative determination on the issue could help guide public officers, and it is likely that the issue will recur).

Psychotropic medication may not be administered against the will of an adult recipient of mental health services unless clear and convincing evidence establishes that each of the following factors is present:

"(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the

mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) *** or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2--107.1(a--5)(4)(A) through (a--5)(4)(G) (West 2006).

Clear and convincing evidence is that quantum of proof that leaves no doubt in the fact finder's mind about the truth of the proposition in question. In re John R., 339 Ill. App. 3d 778, 781 (2003). Although essentially stated in terms of reasonable doubt, clear and convincing evidence amounts to more than a preponderance, while not quite reaching the degree of proof necessary to convict an individual of a criminal charge. In re M.T., 371 Ill. App. 3d 318, 323 (2007).

On appeal, a reviewing court must give great deference to the trial court's factual findings, because the trial court stands in the best position to assess the witnesses' credibility. In re Jeffers, 239 Ill. App. 3d 29, 35 (1992). We may not reverse an order permitting the involuntary administration of psychotropic medication unless the trial court's findings are against the manifest weight of the evidence. In re Israel, 278 Ill. App. 3d 24, 35 (1996). A judgment is considered against the manifest

weight of the evidence only when the opposite conclusion is apparent or when the trial court's findings are unreasonable, arbitrary, or not based on the evidence. In re Dorothy J.N., 373 Ill. App. 3d 332, 335 (2007).

Here, respondent essentially advances two reasons why the State failed to prove by clear and convincing evidence that she is a person subject to the involuntary administration of psychotropic medication. Respondent argues that the State failed to establish (1) that she lacked the capacity to make a reasoned decision about taking medication, and (2) that she was suffering or exhibited a deterioration in her ability to function. We address each contention in turn.

We first consider whether respondent lacked the capacity to make a reasoned decision about taking medication. In addressing this issue, courts consider six factors. Israel, 278 Ill. App. 3d at 37. Those are:

"(1) [T]he person's knowledge that he has a choice to make;

(2) The person's ability to understand the available options, their advantages and disadvantages;

(3) Whether the commitment is voluntary or involuntary;

(4) Whether the person has previously received the type of medication or treatment at issue;

(5) If the person has received similar treatment in the past, whether he can describe what happened as a result and how the effects were beneficial or harmful; and

(6) The absence of any interfering pathological perceptions or beliefs or interfering emotional states which might prevent an understanding of legitimate risks or benefits." Israel, 278 Ill. App. 3d at 37.

When assessing these factors, courts should not find any one factor dispositive. Israel, 278 Ill. App. 3d at 37.

We now consider respondent's argument in light of the above-listed factors. First, we acknowledge that respondent knows that she may choose whether to take medication. The evidence presented at the hearing revealed that respondent agreed to take some medication in the past and that she withdrew her consent at various times. Respondent testified that she did not wish to follow Dr. Susnjar's recommended treatment, and this, in itself, reveals that she knows that she has the right to refuse.

Second, the record reflects that respondent lacks the ability to understand the available options, including their advantages and disadvantages. Despite Dr. Susnjar's professional diagnosis, respondent asserts that she does not suffer from a mental illness and that she does not belong at the EMHC. Rather, respondent contends that any malady she has is neurological. Clearly, because respondent does not believe that she has a mental illness, she cannot reasonably consider the advantages and disadvantages of the administration of any psychotropic medication.

Third, the evidence presented revealed that respondent was found unfit to stand trial on a felony charge. As a result, respondent was transferred to the EMHC, where Dr. Susnjar treated her. Respondent's commitment to the EMHC was thus involuntary.

Fourth, the record reflects that respondent had received the same or similar types of medication in the past. The evidence revealed that respondent previously received mental health treatment twice. In the past, she was treated with Seroquel, which is used to treat schizophrenia and bipolar disorders. Although respondent took this medication, Dr. Susnjar was not able to determine whether it had a positive effect on respondent's mental illness, as respondent stopped taking this

medication soon after treatment began. Dr. Susnjar attempted to treat respondent with Seroquel during her current admission at the EMHC. Respondent refused to be so medicated and asked Dr. Susnjar whether she could receive Risperdal instead. Dr. Susnjar agreed to administer Risperdal. Respondent also took Celexa, which is an antidepressant. Although respondent was given various psychotropic medications, the EMHC staff was not sure whether respondent was actually ingesting the medications. Further, during respondent's current stay at the EMHC, she was treated with medication on an emergency basis. She responded quite well to the medication given at those times. Each time that respondent received that medication, she appeared much less violent and calmer afterwards.

Fifth, although respondent received similar treatment in the past, she could not effectively describe how the medication affected her. Respondent claimed that she suffered from many side effects as a direct result of taking the psychotropic medication that had been prescribed by Dr. Susnjar. Specifically, respondent contended that she suffered from insomnia and felt dizzy, nauseous, and light-headed after being medicated. However, Dr. Susnjar stated that respondent may have chosen to take medication only so that she could later claim that she suffered from side effects. Respondent was monitored for side effects, and Dr. Susnjar, whom the trial court found very credible, never observed that respondent suffered from any side effects associated with taking psychotropic medication.

Sixth, Dr. Susnjar testified that respondent's rage and paranoia affected her decision-making ability. Specifically, Dr. Susnjar stated that "[respondent's] illness is preventing her [from] see[ing] what is her problem" and causes her to distort reality.

After considering each of the above six factors, we hold that the trial court's finding by clear and convincing evidence that respondent lacked the capacity to make a reasoned decision concerning the medication at issue was not against the manifest weight of the evidence.

Citing the fact that she had consented to taking psychotropic medication in the past, respondent argues that the State failed to prove by clear and convincing evidence that, because of a mental illness, she lacked the capacity to make a reasoned decision about taking psychotropic medication. However, the mere fact that respondent consented to taking some medication in the past does not mean that she possessed the capacity to make a reasoned decision about engaging in similar treatment in the future. The evidence established that, although respondent consented to taking medication, she never consented to the type and amount of medication that was necessary to treat her mental illness. Further, respondent's consent was not necessarily based on the fact that she believed that the medication would help treat her illness. Rather, according to Dr. Susnjar, respondent agreed to be medicated because, among other things, she thought that she could then claim that she suffered from side effects and thus stop taking the prescribed medication. Moreover, respondent was not prescribed all of the medication that Dr. Susnjar wished to administer. A respondent's consent to take one type of medication does not preclude the State from seeking to administer another type of medication. Israel, 278 Ill. App. 3d at 31-32. Given these facts, we find respondent's consent to take medication in the past to be of little value in evaluating whether she possessed the ability to make a reasoned decision about whether to take medication presently.

The next issue we consider is whether the State proved by clear and convincing evidence that respondent was suffering or exhibited a deterioration in her ability to function. Because the legislature used the word "or," the State needed to establish only one condition specified in section

2--107.1(a--5)(4)(B) of the Code (see 405 ILCS 5/2--107.1(a--5)(4)(B) (West 2006); People ex rel. Aramburu v. City of Chicago, 73 Ill. App. 2d 184, 192 (1966)). In any event, we determine that the trial court properly found clear and convincing evidence that respondent both was suffering and exhibited a deterioration in her ability to function.

First, the evidence established that respondent was suffering. Dr. Susnjar stated that respondent believed that she was a victim, that the world was evil, and that her entire family was "after [her]." The trial court, to which we must defer (Jeffers, 239 Ill. App. 3d at 35), specifically commented that every time it observed respondent it believed that respondent was suffering. We cannot conclude that this finding was against the manifest weight of the evidence.

Second, the evidence also established that respondent exhibited a deterioration in her ability to function. Seven years before respondent's most recent admission to the EMHC, she was a successful paralegal, having graduated from Northwestern University. At that time, respondent owned her own condominium. Now, respondent has lost her home and job. Although the mere fact that respondent is unemployed and homeless does not establish that she suffered a deterioration in her ability to function (see In re Kness, 277 Ill. App. 3d 711, 719 (1996); In re Winters, 255 Ill. App. 3d 605, 610 (1994)), other evidence supports that reasonable conclusion.

When respondent was admitted to the EMHC in August 2006, she did not believe that she was there because she had been found unfit to stand trial. Instead, respondent thought that the federal government was punishing her because she had expressed some negative views about President Bush. Moreover, during her stay at the EMHC, respondent frequently overreacted to minor confrontations. In the two months after she was admitted, respondent engaged in conduct so inappropriate that she had to be restrained and/or medicated. Dr. Susnjar stated that respondent's

behavior caused the EMHC staff to be very cautious of how they approached her, for fear that her rage would escalate and that she would "explode." Given these facts, we determine that the finding that respondent exhibited a deterioration in her ability to function was not against the manifest weight of the evidence.

For these reasons, we conclude that the trial court's determination that respondent was subject to the involuntary administration of psychotropic medication was not against the manifest weight of the evidence. Accordingly, we affirm the judgment of the circuit court of Kane County.

Affirmed.

McLAREN and GILLERAN JOHNSON, JJ., concur.