THIRD DIVISION
JANUARY 31, 2007

No. 1-06-0170

| | | |
|---|---|---|
| *In re* M.T., Alleged to be a Person | ) | Appeal from the |
| Subject to Involuntary Treatment With | ) | Circuit Court of |
| Psychotropic Medication | ) | Cook County. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 06 COMH 130 |
| | ) | |
| v. | ) | |
| | ) | |
| Maria T., | ) | Honorable |
| | ) | Nathaniel R. Howse, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Respondent, Maria T., appeals from an order of the circuit court of Cook County authorizing her involuntary treatment with psychotropic medication. She contends that the order should be reversed because the State failed to prove by clear and convincing evidence that the benefits of the medication outweighed the harm.

The State, through Dr. Joanna Poniaquwicz of Lutheran General Hospital, petitioned the court on January 11, 2006, to begin the involuntary treatment of respondent with psychotropic medications pursuant to section 2-107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2-107.1 (West 2004)). In the petition, Dr. Poniaquwicz stated that respondent suffered from paranoid schizophrenia, that she was currently psychotic and unable to function, and sought to medicate her with

1-06-0170

Proloxin Decanoate (12.5- to 25-milligram injection every two weeks), and alternatively with Risperidone[1] Consta (25- to 50-milligram injection every two weeks), oral Proloxin tablets (up to 40 milligrams per day), and oral risperidone tablets (up to 8 milligrams per day).

On January 13, 2006, Dr. Poniaquwicz responded to a routine bill of particulars, stating that respondent had been involuntarily admitted to Chicago Read Hospital in December 2004, received Proloxin Decanoate, and responded "well," as she was able to care for herself and be discharged from the hospital in March 2005. However, because respondent became noncompliant with her medication, she was readmitted to Swedish Covenant Hospital in November 2005.

On January 20, 2006, a hearing was held on the State's petition. Nancy S., respondent's daughter, testified regarding the series of events leading to respondent's present hospitalization. During the first two weeks of November 2005, respondent told her that she owned at least one other home, which she did not, and that when she went there to bathe herself, the police came and took her to Swedish Covenant Hospital. She also told her that she was the Virgin Mary, that she was rich, and that banks owed her money. On December 22, 2005, when Nancy took

---

[1] "Risperidone" and "Risperdal" are used interchangeably throughout the record.

respondent to a grocery store, respondent was reluctant to purchase fruits, vegetables, and milk for fear of contamination. On January 5, 2006, respondent told Nancy that she had not been eating because her food was being poisoned, which statement respondent had made to her at least six times during December 2005. Nancy had also noticed that respondent had lost about 15 pounds from October 2005 to the time of the hearing.

On January 6, 2006, respondent was admitted to Lutheran General Hospital and continued to express that her food was being poisoned. She also told Nancy to cover herself to prevent people from inserting objects into her orifices and that she had inserted tampons "in her behind." In addition, respondent told Nancy that her home was "fine" and that she had been using the heat; however, when Nancy visited there five days later, she had to crawl through a broken window to enter the house because the entrance was barricaded, the refrigerator was unplugged and in the living room with a chain around it, the furnace was turned off, the oven was turned on and opened, and a waffle iron was turned on to heat the basement. Respondent subsequently told Nancy, on January 8, 2006, that she could not eat the hospital food because it smelled "funny" and because voices had told her not to do so.

Nancy further testified that respondent had been on long-term psychotropic medications in the past, most recently from

October 2004 through February 2005, when she was involuntarily admitted to Read Hospital. At that time, respondent was prescribed Risperdal, among other things, and after receiving this medication, respondent was more rational, did not hallucinate as often, and talked more about everyday life. Although she experienced some side effects from the medication, they were able to be controlled. When respondent was discharged, she was still "a little paranoid," but she was better able to care for herself and her home, *i.e.*, she bought a wider variety of foods, gained weight, cleaned her house, and used space heaters. Nancy acknowledged that she "probably" told Dr. Poniaquwicz that Risperdal had not done respondent "a lot of good" in the past.

Dr. Poniaquwicz, an expert in the field of psychiatry and respondent's attending physician, testified that respondent was admitted to Lutheran General Hospital on January 6, 2006. Dr. Poniaquwicz first examined respondent on January 7, 2006, and about six days a week thereafter. Based on her inquiry into respondent's social history, including talking to Nancy, reviewing respondent's medical records, and discussing the case with her peers, she opined that respondent suffered from paranoid schizophrenia and had done so for 26 years. Respondent was currently symptomatic and experiencing paranoid delusions, *i.e.*, her food was being poisoned and voices were telling her not to

eat. She was also displaying disorganized behaviors, *i.e.*, she attempted to tie a stocking around her neck and knelt on her bed with the covers over her head. In addition, respondent was displaying isolating behaviors and talking to herself. Based on respondent's condition, *i.e.*, her inability to keep her house safe or eat properly, Dr. Poniaquwicz believed that respondent's ability to function had deteriorated.

On January 9, 2006, Dr. Poniaquwicz observed respondent attempting to tie a stocking around her neck and concluded that respondent presented a threat to herself and that she lacked the capacity to make decisions regarding her treatment. She therefore administered two separate, 10-milligram emergency doses of Proloxin to respondent. Although respondent became calmer after receiving the medication, she complained that she was tired and that her tongue felt large after the second dose was administered on January 13, 2006. Dr. Poniaquwicz explained that respondent had experienced a dystonic reaction to the medication, a side effect which caused her tongue muscle to tense up, so Dr. Poniaquwicz issued a "stat" order for Cogentin to relieve the side effect. Because the Cogentin did not completely resolve the issue, Dr. Poniaquwicz subsequently ordered Benadryl, which completely resolved the problem. Dr. Poniaquwicz then discontinued the administration of Proloxin for two reasons: the

side effects and her uncertainty regarding the amount of time she could administer the medication under the circumstances.

Despite respondent's reaction, Dr. Poniaquwicz still sought permission to treat respondent with Proloxin Decanoate and, alternatively, with Risperdal Consta, oral tablets of Proloxin, and oral tablets of Risperdal, in the dosages indicated in the petition, for 90 days. Dr. Poniaquwicz based her request on the fact that respondent had historically responded best to Proloxin, as she had taken it during her last inpatient hospitalization and in the 1990s during a hospitalization in Montana. Moreover, Nancy had told her that when respondent had previously taken Proloxin for an extended period of time, her symptoms markedly diminished and that she was able to function independently and be discharged from the hospital. With regard to the risperidone, Dr. Poniaquwicz testified that Nancy had informed her that respondent had responded well to the medication in the past and that she would have to further explore Nancy's statement that it had not done respondent "much good."

Dr. Poniaquwicz acknowledged that the possible side effects of Proloxin, as well as the alternative medications listed in the petition, included tardive dyskinesia, extrapyramidal symptoms, dystonia, tremor, akinesia, neuroleptic malignant syndrome (NMS), and diabetes. She further acknowledged that respondent's age and gender put her at an increased risk of developing tardive

dyskinesia, *i.e.*, abnormal movements, and NMS, which was potentially, but rarely, fatal. Nevertheless, Dr. Poniaquwicz opined that the anticipated benefits of administering the proposed psychotropic medications outweighed the possible harm because the side effects could be "remedied with appropriate medications," and she "hoped" and "believed" that the requested medications would enable respondent to function independently, eat regularly, and be discharged from the hospital. She conversely believed that, if left untreated, respondent's symptoms would worsen, her condition would further deteriorate, and she would be unable to live independently. Dr. Poniaquwicz further opined that a less restrictive treatment was inappropriate for respondent's condition.

Dr. Poniaquwicz finally testified that due to respondent's most recent reaction to Proloxin, she would start her on a low dose, closely monitor whether she experienced any side effects, and if so, administer the "appropriate medications" to counter them. She also stated that she would be available daily to monitor respondent's response to the medications, would ensure that the medications were safely and effectively administered though various tests requested in the petition, *e.g.*, electrocardiograms, metabolic profiles, and vital signs, and that a psychiatrist would be available to intervene on an emergency basis if respondent experienced adverse side effects. At the

conclusion of the hearing, the circuit court found that the State had proved the factors necessary to grant the petition by clear and convincing evidence. The court specifically found:

> "[A]lthough there were some side effects, they were completely abated by the administration of counteracting drugs. The alternative for this individual is her not [being] able to live a normal life in her home the way she wants to live it. With the medication she can go back to living her life. The physical harm can be abated by the counteracting drugs, and, therefore, the petition is granted."

The court then entered an order allowing Dr. Poniaquwicz to administer Proloxin Decanoate (12.5- to 50-milligram injections every two weeks) to respondent for 90 days. The order alternatively granted Dr. Poniaquwicz the authority to administer Risperidone Consta (25- to 50-milligram injections every two weeks), Proloxin tablets (up to 40 milligrams per day), and risperidone tablets (up to 8 milligrams per day).

In this appeal from that order, respondent asserts that the State failed to prove by clear and convincing evidence that the benefits of the medication outweighed the harm. She thus requests that the order of the circuit court be reversed.

Initially, we observe that this case is moot. The order authorizing the administration of respondent's involuntary treatment was effective for no more than 90 days, and thus expired on April 20, 2006. 405 ILCS 5/2-107.1(a-5)(5) (West 2004). Nevertheless, review of this appeal is appropriate under the "public interest exception" to the mootness doctrine. In re Mary Ann P., 202 Ill. 2d 393, 401-02 (2002).

Authorized involuntary treatment, *i.e.*, the forced administration of psychotropic medication, shall not be administered to an adult recipient unless the State proves seven specific factors, including that the benefits of the treatment outweigh the harm, by clear and convincing evidence. 405 ILCS 5/2-107.1(a-5)(4) (West 2004); In re C.E., 161 Ill. 2d 200, 208, 221 (1994). Clear and convincing evidence is deemed to be more than a preponderance, but does not reach the degree of proof necessary to convict a person of a criminal offense. In re John R., 339 Ill. App. 3d 778, 781 (2003). On review, we give great deference to the circuit court's factual findings and will not reverse its decision merely because we may have reached a different conclusion; instead, reversal is warranted only if the circuit court's decision is manifestly erroneous, *i.e.*, the error is clearly evident, plain, and undisputable. In re Jeffers, 239 Ill. App. 3d 29, 35 (1992). For the reasons that follow, we do not find this to be such a case.

The record before us discloses respondent's history and deteriorating condition, *i.e.*, her 26-year diagnosis of paranoid schizophrenia, and her recent behaviors and delusions which prohibited her from safely and properly caring for herself. Based on these behaviors and respondent's inability to conduct a reasonably safe existence, Dr. Poniaquwicz determined that the benefits of administering psychotropic medications, primarily Proloxin, outweighed the harm of the side effects. She anticipated that if treated with the proposed psychotropic medications, respondent would be able to function independently, eat regularly, and be discharged from the hospital. She conversely believed that, if left untreated, respondent's symptoms would worsen, her condition would further deteriorate, and she would be unable to live independently.

Dr. Poniaquwicz based her opinion, in part, on Nancy's report of respondent's positive response to Proloxin in the past. When respondent had previously taken this medication for an extended period of time, her symptoms markedly diminished, and she was able to function independently and be discharged from the hospital. Nancy specifically told her that when respondent was treated at Read Hospital with Proloxin (and Risperdal) from October 2004 through February 2005, she was more rational, did not hallucinate as often, talked more about everyday life, and better cared for herself and her home upon discharge from the

hospital. Nancy also reported that although respondent had experienced side effects from the medications, they were able to be controlled.

The evidence further showed that despite respondent's dystonic reaction to the second 10-milligram dose of Proloxin on January 13, 2006, Dr. Poniaquwicz was able to relieve the side effects with Cogentin and Benadryl, and would be available daily to monitor respondent's response to the medications and to administer "appropriate medications" to counteract any side effects. In addition, the circuit court approved Dr. Poniaquwicz's request for laboratory tests to ensure that the psychotropic medications were administered safely and effectively. We thus conclude that the State provided clear and convincing evidence that the benefits of administering psychotropic medications to respondent outweighed the harm (405 ILCS 5/2-107.1(a-5)(4)(D) (West 2004)), and that the court's order to that effect was not manifestly erroneous.

In so finding, we reject respondent's arguments that the circuit court's order should be reversed because the "side-effect-relieving" medications were not requested in the petition or authorized by the court, and because such medications posed the risk of side effects. A petitioner is not required to set forth the specific medications she seeks to administer. In re Miller, 301 Ill. App. 3d 1060, 1071 (1998). Moreover, while an

order "shall *** specify the medications and the anticipated range of dosages that have been authorized and may include a list of any alternative medications and range of dosages" (405 ILCS 5/2-107.1(a-5)(6) (West 2004)), we have not found, and respondent has not provided, any case law where an order entered under section 2-107.1 was reversed because a medication used to quell the side effects of a psychotropic medication was not listed in the court's order.

Rather, reviewing courts have reversed circuit court orders where the order, and the court's oral ruling, failed to specify the **psychotropic** medications and the range of dosages **requested in the petition**. See, *e.g.*, In re Gwendolyn N., 326 Ill. App. 3d 427, 430-31 (2001); In re Williams, 305 Ill. App. 3d 506, 511-512 (1999); In re Len P., 302 Ill. App. 3d 281, 285 (1999). Here, the circuit court heard the harm and benefits associated with all of the medications listed in the petition, and its order properly enumerated each of those medications and ranges of dosages. In re Mary Ann P., 202 Ill. 2d at 405. In addition, the circuit court's ruling made it clear that the side effects of the psychotropic medications were to be relieved with "counteracting drugs." Thus, we find no cause for reversal based on respondent's argument with regard to the auxiliary medications.

We further find that reversal is not warranted where respondent failed to object to the omission of the counteracting

drugs when the court entered its order, and where the record shows that Dr. Poniaquwicz was intimately familiar with respondent's treating protocol.  Dr. Poniaquwicz treated respondent when she experienced side effects from Proloxin, acted as respondent's attending physician for weeks before the hearing, and intended to continue in that role when the requested medications were administered.

Moreover, respondent has failed to argue or demonstrate that she was prejudiced by the omission of the counteracting medications from the order.  In re Miller, 301 Ill. App. 3d at 1072.  Instead, she merely asserts that Dr. Poniaquwicz lacked the authorization to administer counteracting medications to her in the event that she experienced side effects from the psychotropic medications.  This argument is clearly refuted by the record.

Finally, we refuse to consider respondent's argument, raised for the first time on appeal, that Cogentin and Benadryl may cause side effects.  In re Jeffers, 239 Ill. App. 3d at 37.

Accordingly, we affirm the order of the circuit court of Cook County.

Affirmed.

THEIS, P.J., and KARNEZIS, J., concur.