*In re* SUZETTE D., Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Suzette D., Respondent-Appellant).

Second District   No. 2—07—1286

Opinion filed March 11, 2009.

Veronique Baker, of Guardianship & Advocacy Commission, of Chicago, and Andreas Liewald, of Guardianship & Advocacy Commission, of Hines, for appellant.

John A. Barsanti, State's Attorney, of St. Charles (Lawrence M. Bauer and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE O'MALLEY delivered the opinion of the court:

Respondent, Suzette D., appeals from the trial court's order authorizing the involuntary administration of psychotropic medication to respondent for up to 90 days pursuant to section 2—107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2—107.1 (West 2006)). Respondent contends that the trial court erred in granting the petition where the State failed to prove by clear and convincing evidence that (1) the benefits of treatment outweighed the harm, and (2) she lacked the capacity to make a reasoned decision concerning her own treatment. Because we agree with respondent's first argument, we reverse.

Respondent was found unfit to stand trial on what appears to be a charge of trespass to property. On November 7, 2007, respondent was transferred to the Elgin Mental Health Center (EMHC). On November 9, 2007, the State filed a petition in the circuit court of Kane County,

seeking an order authorizing the involuntary administration of psychotropic medication to respondent for a period of 90 days. See 405 ILCS 5/2—107.1 (West 2006). The petition was signed by Dr. Mirella Susnjar, respondent's treating psychiatrist at the EMHC.

Susnjar diagnosed respondent with schizo-affective disorder, bipolar type. Susnjar based her diagnosis on respondent's past treatment records, Susnjar's conversations with the treatment staff, and Susnjar's conversation with respondent and her observations of respondent while at the EMHC. Susnjar also considered respondent's prior hospitalizations. Specifically, respondent was hospitalized from February 2001 until May 2001, for severe depression with psychotic features. Respondent was refusing to eat because she believed that, if she ate, her husband would die in a horrible car crash and something terrible would happen to her children. Respondent stopped taking care of herself, she lost weight, and she refused to speak. While at the EMHC, respondent improved with medication and she was discharged on Depakote (a mood stabilizer), Risperdal (an antipsychotic), and Remeron (an antidepressant). Respondent was again admitted to the EMHC in April 2002. Again, respondent improved with medication and was released in May 2002. It is not clear from the record what medication was administered in 2002.

Susnjar testified that respondent was currently suffering from mania and psychosis. She was depressed, fearful, full of despair, and unable to train her thoughts on one subject at a time. Respondent exhibited inadequate thinking and poor judgment. Respondent was suffering from paranoid thoughts. Respondent believed that people were after her and she felt persecuted by the police and courtroom personnel. Respondent believed that the nurses and doctors at the EMHC were associated with the Mafia. Respondent was demanding to be released and could not understand why she was being detained at the EMHC.

According to Susnjar, because of respondent's mental illness, respondent had experienced a deterioration in functioning and was exhibiting threatening behavior. Specifically, on November 9, 2007, respondent demanded to be released and became "very threatening." To prevent respondent from becoming violent, Susnjar administered a five-milligram emergency dose of Haldol. ("Haldol" and "haloperidol" are used interchangeably throughout the record.) With the medication, respondent became calm and was able to converse appropriately with staff. The calming effects lasted until the next day, when respondent's judgment again worsened. Although respondent slept after being administered Haldol, Susnjar attributed the sleepiness to respondent's earlier aggressive outbreak and not to the medication.

On November 19, 2007, respondent became so agitated and disruptive in the dining room that she was removed from the room. Respondent became "physically tense" and threatened to kill Susnjar. Susnjar again administered a five-milligram emergency dose of Haldol. Within a few hours, respondent became calm. Susnjar did not notice any side effects from the Haldol.

Respondent claimed to be pregnant but a urine pregnancy test result was negative for pregnancy. Although Susnjar believed that it was unlikely that respondent was pregnant, Susnjar would perform a blood test to confirm the negative pregnancy result before administering any medication. Only Haldol could be administered safely during pregnancy.

Susnjar sought to medicate respondent with the following medications for psychosis and mood stabilization: (1) risperidone, (2) long-acting risperidone consta, (3) olanzapine, (4) Zydis, and (5) quetiapine. Apparently Zydis is the brand name for the generic drug olanzapine. Alternatively, Susnjar sought to administer the following medications for psychosis: (6) haloperidol (Haldol), (7) long-acting haloperidol decanoate, (8) fluphenazine, (9) long-acting fluphenazine decanoate, and (10) chlorpromazine. For anxiety and mood stabilization, Susnjar sought to administer the alternative medications (11) hydroxyzine, (12) lorazepam, and (13) divalproex Na (also known as Depakote). Lastly, Susnjar sought to administer (14) benztropine, to counter the effects of the neuroleptics.

Susnjar did not intend to use all of these medications but rather was listing all of the various medication options. Susnjar opined that the benefits of the petitioned-for medications outweighed their harm. Susnjar based her opinion in part on respondent's response to the two doses of Haldol administered in November. Susnjar also considered the fact that, in 2001, with the administration of Depakote and risperidone, respondent stabilized to the point that she was released. According to Susnjar, Depakote was a medication that she "cannot enforce," but Susnjar was hoping respondent would agree to take Depakote with a court order. There was no explanation as to why she could not "enforce" this particular medication or why then this medication would have been included in the involuntary treatment order. Lastly, Susnjar explained that hydroxyzine and lorazepam would be given to calm respondent until the neuroleptics took effect. Susnjar did not explain the benefits of risperidone consta, olanzapine, Zydis, quetiapine, haloperidol decanoate, fluphenazine, fluphenazine decanoate, and chlorpromazine, although presumably the long-lasting forms of risperidone, *i.e.*, risperidone consta, and Haldol, *i.e.*, haloperidol decanoate, would have the same benefits as their short-term forms.

Next, Susnjar explained the side effects of neuroleptic or antipsychotic medications in general. According to Susnjar, neuroleptics may cause tardive dyskinesia, which are involuntary movements, and "NMS," which is similar to an allergic reaction and may result in death. Susnjar also explained that, with increased doses of neuroleptics, the recipient may also experience anxiety, stiffness, edginess, and inner discomfort. On cross-examination, Susnjar testified that sedation is a side effect of olanzapine and haloperidol and that dry mouth is a side effect associated with "the medication that is given for the effects."

Susnjar did not testify to the possible side effects of hydroxyzine, lorazepam, and divalproex (Depakote). Furthermore, Susnjar did not know if respondent suffered any specific side effects when she was discharged on Depakote and risperidone in 2001. Susnjar had to rely on respondent reporting such side effects, and when Susnjar questioned respondent in this regard, respondent denied ever being hospitalized in 2001.

During her testimony, Susnjar also mentioned "Prozac Sodium" and requested "20 milligrams or kilograms." Presumably, Susnjar meant 20 milligrams per kilogram of body weight. "Prozac Sodium" was not included in the petition or in the treatment order and there was no testimony provided as to its benefits and side effects.

Respondent testified that she did not need medication. Respondent explained that in 2000 she was taking medication that caused her to be "zombie-like," drool, fall down, and feel detached from her emotions. When she stopped taking the medication, she felt much better. Respondent did not want to take the current petitioned-for medication because she was afraid of needles and had allergies to certain foods and to red dye.

The trial court granted the petition to involuntarily administer psychotropic medication and authorized the administration of all 14 medications for a period of 90 days. The trial court found that respondent lacked the capacity to make a reasoned decision regarding her medication and that the benefits of the medication outweighed the harm. Respondent timely appealed.

On appeal, respondent argues that the State failed to prove by clear and convincing evidence that (1) the benefits of treatment outweighed the harm, and (2) she lacked the capacity to make a reasoned decision concerning her own treatment. We reach only respondent's first contention, as we find it dispositive.

■ Before addressing the merits, we note that the issue is moot because the 90-day period covered by the trial court's order has already expired. *In re Robert S.*, 213 Ill. 2d 30, 45 (2004). "An appeal is

considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006). Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). Reviewing courts, however, recognize exceptions to the mootness doctrine, such as the public interest exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties, and an exception for cases involving events of short duration that are capable of repetition, yet evading review. *J.T.*, 221 Ill. 2d at 350. This second exception applies where: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *Barbara H.*, 183 Ill. 2d at 491.

The State urges us to follow the Fourth District's recent opinion in *In re Alfred H.H.*, 379 Ill. App. 3d 1026 (2008), which found that the mootness exceptions did not apply to an appeal from an involuntary admission order. The *Alfred H.H.* court chose not to apply the capable-of-repetition exception, because there was no reasonable expectation that the respondent would be subjected to the *"exact same action"* in the future, meaning involving the same circumstances and the same evidence. (Emphasis in original.) *Alfred H.H.*, 379 Ill. App. 3d at 1029. We recently addressed a similar mootness issue in *In re Jonathan P.*, 386 Ill. App. 3d 981, 985-86 (2008), and there we declined to follow *Alfred H.H.*, finding it to be at odds with the supreme court's interpretation of the capable-of-repetition exception. We found the phrase "same action" to mean that the same party will be subjected to the "same statutory provision" in the future (*In re A Minor*, 127 Ill. 2d 247, 259 (1989)) or to "similar orders" in the future (*In re Marie M.*, 374 Ill. App. 3d 913, 916 (2007)). *Jonathan P.*, 386 Ill. App. 3d at 986-87.

Here, it is not clear from the record whether respondent took medication voluntarily in 2001 and 2002, or whether she was subjected to involuntary treatment. It is clear, however, that respondent had received similar psychotropic medications in the recent past and that she is suffering from a chronic mental illness that can inhibit her ability to make a reasoned decision about treatment. Thus, it is reasonably likely that she will be subjected to similar involuntary treatment orders in the future. See *Jonathan P.*, 386 Ill. App. 3d at 986-87. Also, the challenged action is obviously too short to be fully litigated during

the pendency of the order. See *Jonathan P.*, 386 Ill. App. 3d at 986. Accordingly, we apply the capable-of-repetition exception.

Respondent argues that the State failed to prove by clear and convincing evidence that the benefits of treatment outweigh its harm. Although respondent failed to raise this issue in the trial court, it affects a substantial right and, therefore, we review it for plain error. See 134 Ill. 2d R. 615(a); *In re Cynthia S.*, 326 Ill. App. 3d 65, 68 (2001) ("Fundamental liberty interests are involved in the involuntary administration of medication for mental health purposes").

■ Given the fairly invasive nature of psychotropic medications, and the possibility of significant side effects associated with the medications, courts must be cautious in entering orders allowing hospital staff to involuntarily administer these medications. *In re David S.*, 386 Ill. App. 3d 878, 882 (2008). Section 2—107.1 of the Code (405 ILCS 5/2—107.1 (West 2006)) delineates the nonemergency circumstances under which psychotropic medication may be administered against the wishes of the recipient. Section 2—107.1(a—5)(4) directs that forced administration of psychotropic medication is authorized only if the court finds evidence of each of the following elements, by clear and convincing proof:

"(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2—107.1(a—5)(4) (West 2006).

Clear and convincing evidence is defined as the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the veracity of the proposition in question. *In re Israel*, 278 Ill. App. 3d 24,

35 (1996). As a reviewing court, we give great deference to the trial court's factual findings (*In re Kness*, 277 Ill. App. 3d 711, 718 (1996)), but we will reverse an order allowing the involuntary administration of psychotropic medication when the trial court's findings are against the manifest weight of the evidence. *In re John R.*, 339 Ill. App. 3d 778, 781 (2003). The phrase, "against the manifest weight of the evidence," has been used, quite contrary to its literal meaning, to include situations where the trial court's findings are not based on evidence. See *John R.*, 339 Ill. App. 3d at 781.

■ Here, the trial court's order must be reversed because there was insufficient evidence to support the trial court's finding that the benefits of the medication outweighed the harm. "The statutory scheme of the Code requires 'specific evidence [of] the benefits and risks of each medication *** so that the trial court may determine whether the State can demonstrate by clear and convincing evidence that the benefits of the proposed treatment outweigh the potential harm.' " *In re C.S.*, 383 Ill. App. 3d 449, 452 (2008), quoting *In re Alaka W.*, 379 Ill. App. 3d 251, 263 (2008). Thus, the State must produce evidence of the benefits of each drug sought to be administered as well as the potential side effects of each drug. *Alaka W.*, 379 Ill. App. 3d at 263. If the State fails to produce such evidence, we must reverse the involuntary-treatment order.

First, we note that the State petitioned for, and the trial court approved, the administration of benztropine. Benztropine is a side-effect-relieving medication, not a psychotropic medication. See *In re A.W.*, 381 Ill. App. 3d 950, 959 (2008) (Cogentin (or benztropine) is a non-psychotropic, side-effect-relieving medication). Section 2—107.1 of the Code governs the administration of *psychotropic* medication. See 405 ILCS 5/2—107.1 (West 2006). The Code does not require that an involuntary-treatment petition or an involuntary-treatment order set forth proposed *nonpsychotropic* medications (*A.W.*, 381 Ill. App. 3d at 959). But the State is not prohibited from requesting such medication and the trial court is not prohibited from including the medication in the treatment order, provided that there is evidence to support it. Compare *A.W.*, 381 Ill. App. 3d at 959-60 (testimony that Cogentin would be used to reduce the side effects of the psychotropic medications was sufficient to support involuntary-treatment order), with *Alaka W.*, 379 Ill. App. 3d at 257, 264 (where psychiatrist petitioned for five medications, including Cogentin, but there was no testimony as to the benefits or side effects of any of the five medications, order was reversed).

Here, Susnjar's testimony does not support the trial court's finding that the benefits of the medication outweighed the harm, because

Susnjar failed to testify to the benefits and potential side effects of every petitioned-for medication. Susnjar failed to explain the benefits of risperidone consta, olanzapine, Zydis, quetiapine, haloperidol decanoate, fluphenazine, fluphenazine decanoate, and chlorpromazine, although, as mentioned earlier, the long-lasting forms of risperidone, *i.e.*, risperdione consta, and Haldol, *i.e.*, haloperdiol decanoate, presumably would have the same benefits as their short-term forms. Susnjar also failed to explain the possible side effects of hydroxyzine, lorazepam, and divalproex (Depakote). Thus, there was no evidence supporting the trial court's finding that the benefits of these particular medications outweighed their harm. And, as *In re Mary Ann P.*, 202 Ill. 2d 393, 405-06 (2002), teaches us, where "the recommended treatment consists of multiple medications—some to be administered alternatively, some to be administered in combination, and some to be administered only as needed to counter side effects—it is only this treatment, in its entirety, that may be authorized." The lack of evidence on all petitioned-for medications is fatal to the entire petition. *Cf. In re Gail F.*, 365 Ill. App. 3d 439, 447 (2006) (recognizing that *Mary Ann P.* did not create an absolute bar on a court's approval of fewer than all of the medications listed in the written petition, but requiring that any variance from the petition be made by explicit request of the treating physician). Without testimony as to the benefits and side effects of each and every petitioned-for medication, the State failed to prove that the benefits of involuntary treatment outweighed its harm. See *In re Kness*, 277 Ill. App. 3d 711, 720 (1996) (without testimony identifying the medication sought to be administered and an explanation of the side effects of the medication, "there is no evidence from which the trial court could determine that the benefits outweighed the harm of the medication").

This case is not similar to *In re M.T.*, 371 Ill. App. 3d 318 (2007), cited by the State. In *M.T.*, the psychiatrist sought to administer, among other things, Proloxin. She explained that, although the respondent had suffered tensing of the tongue muscle from Proloxin once in the past, this side effect was effectively relieved by administering Cogentin and Benadryl. *M.T.*, 371 Ill. App. 3d at 321. The psychiatrist testified that, due to the respondent's recent reaction to Proloxin, she would start her on a low dose, closely monitor whether she experienced any side effects, and, if so, administer the " 'appropriate medications' " to counter them. *M.T.*, 371 Ill. App. 3d at 322. The respondent sought reversal based on the State's failure to petition for side-effect-relieving medications and to offer evidence of the side effects of these medications. *M.T.*, 371 Ill. App. 3d at 324. The reviewing court found that reversal was not required simply because a medica-

tion used to quell the side effects of a psychotropic medication was not included in the court's order. *M.T.*, 371 Ill. App. 3d at 324. The court further noted that the respondent failed to object to the omission of the side-effect-relieving drugs when the court entered its order and that the record showed that the psychiatrist was intimately familiar with the respondent's treating protocol. *M.T.*, 371 Ill. App. 3d at 325. We reject the State's suggestion that, based on *M.T.*, we may excuse the lack of evidence regarding the benefits and the harm of *psychotropic* medication simply because Susnjar was respondent's treating psychiatrist for one month prior to the hearing. Not only is this suggestion unsupported by the case cited by the State, it is contrary to the requirements set forth in the Code and the relevant case law. See 405 ILCS 5/2—107.1(a—5)(4)(D) (West 2006).

In sum, the involuntary-treatment order was not supported by evidence that the benefit of treatment outweighed its harm and, accordingly, the order must be reversed. A remand is not necessary, since the administration of the medication has been terminated according to the terms of the trial court's order. See *In re Richard C.*, 329 Ill. App. 3d 1090, 1094 (2002).

We do note as a final matter that we recently published a decision based on similarly deficient evidence supporting an involuntary-treatment order. See *Jonathan P.*, 386 Ill. App. 3d at 988-89. Given the serious liberty interests infringed when a recipient is subjected to involuntary treatment, we find the State's perfunctory manner in prosecuting these petitions disturbing. As articulated by the Fifth District in *John R.*:

> "These proceedings should not be conducted *pro forma*. Fundamental liberty interests are involved in proceedings under the Code. [Citation.] *** The petitioner bears a substantial burden of proof that the trial judge should force the petitioner to meet with real, clear, and convincing evidence before the court enters an order infringing on the respondent's important liberty interests. We believe that every party involved in these proceedings has the best interests of the patient/respondents in mind. Nevertheless, the system can be, and has been, abused, and mistakes have no doubt been made. Accordingly, we remind the parties involved in these proceedings to be ever vigilant to protect the rights of the respondents as reflected in the Code." *John R.*, 339 Ill. App. 3d at 785.

In so concluding, we urge strict compliance with the standards and procedures set forth in the Code and caution that the failure to follow those procedures creates the likelihood of extremely serious infringement of fundamental liberty interests of vulnerable citizens as well as reversal.

The judgment of the circuit court of Kane County is reversed.

Reversed.

JORGENSEN and BURKE, JJ., concur.