# Illinois Official Reports

## Appellate Court

<br>

*In re Donald L.*, 2014 IL App (2d) 130044

<br>

| | |
|---|---|
| Appellate Court Caption | *In re* DONALD L., Alleged to be a Person Subject to Involuntary Treatment (The People of the State of Illinois, Petitioner-Appellee, v. Donald L., Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-13-0044 |
| Filed | February 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although the order allowing respondent's doctors to administer unspecified tests had expired and his appeal was moot, the issue was considered under the public-interest exception, and since the order allowing "other tests necessary to evaluate safe administration of medications" was not supported by any evidence as to what the tests might be, the order was reversed on the ground that it violated section 2-107.1(a-5)(4)(G) of the Mental Health and Developmental Disabilities Code. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 12-MH-126; the Hon. Kathryn D. Karayannis, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Veronique Baker, of Guardianship & Advocacy Commission, of Chicago, and Ann Krasuski, of Guardianship & Advocacy Commission, of Hines, for appellant. |
| | |
| | Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion. Justices Jorgensen and Birkett concurred in the judgment and opinion. |

## OPINION

¶ 1    Respondent, Donald L., appeals the trial court's order authorizing the involuntary administration of psychotropic medication and testing for up to 90 days under section 2-107.1(a-5)(4) of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2-107.1(a-5)(4) (West 2012)). Respondent contends that the trial court failed to comply with the Code when it allowed his doctors to administer unspecified tests. He also contends that the court erred in finding that he lacked capacity to make a reasoned decision about medication. We agree with respondent's first contention and reverse on that point.

¶ 2                                I. BACKGROUND

¶ 3    On November 8, 2012, respondent was involuntarily admitted to the Elgin Mental Health Center after being adjudicated unfit to stand trial for possession of a weapon. He had previously been involuntarily admitted from February 17, 2011, to April 25, 2011. After that, he was living in the community and receiving mental health treatment.

¶ 4    On November 21, 2012, respondent's treating psychiatrist, Dr. Mirella Susnjar, sought an order authorizing the involuntary administration of psychotropic medication, testing, and medical procedures. On December 7, 2012, a hearing was held.

¶ 5    Susnjar testified that respondent was diagnosed with schizophrenia, undifferentiated type, which is a serious mental illness. She said that respondent heard voices that he perceived as real. Respondent believed that the Mormon Church was a threat to him and that the voices were warning him about it. Susnjar said that respondent demonstrated symptoms such as hallucinations and difficulty socializing with people. In her opinion, respondent displayed unreasonable fears and false beliefs, which made him unable to appreciate his problems or make decisions about medication. She opined that his mental illness caused a deterioration of his ability to function, including making him unfit to stand trial.

- 2 -

¶ 6    Susnjar stated that respondent did not believe that he had a mental illness. She said that she spoke with him four times to discuss medication and that he said that he would not take it, expressing strong beliefs that the medications would hurt him, make him fat, possibly cause him to transfer birth defects to his future partner, and cause side-effects that he previously experienced with psychotropic medications.

¶ 7    Susnjar requested to administer risperidone, olanzapine, quetiapine, and aripiprazole for psychosis and haloperidol and lorazepam for anxiety. She also requested diphenhydramine (Benadryl) and benztropine to address side-effects. She testified specifically about each medication and stated why she selected it. Susnjar said that she chose medications that would be comfortable for respondent to use, but there were also 15 alternate medications she could offer for respondent to choose from.

¶ 8    The petition sought to administer the following tests and procedures:

"Physical exam, weight, vitals: blood pressure, pulse, respiration, temperature, blood work: CBC and differential, BUN and creatine, liver function tests, lipid panel, thyroid tests, and other tests necessary to evaluate safe administration of medications, level of medication in blood, EKG if necessary."

¶ 9    Susnjar was asked to outline the tests and procedures she requested, and she stated:

"Blood pressure, pulse, temperature, blood work in a sense of monitoring the health of blood, and it can be CBC and differential, address the function of the kidneys, liver function test, TSH, thyroid testing, lipid testing, because as I said sometimes people can start to gain weight and we monitor that very carefully. Any test that is necessary to assure a safe administration of medications. EKG if necessary, as well as level of medication in blood."

There was no further description or explanation of the tests.

¶ 10    Respondent testified about his previous involuntary commitment, during which he was also diagnosed with schizophrenia, undifferentiated type, and was treated with medications. He said that he was initially given only risperidone and that he suffered side-effects. Respondent stated that his "face swelled up like a punching bag," that he "walked around like a zombie," and that his speech was slurred. The next day the doctors adjusted the dose and gave him what he testified was Benadryl, but was actually benztropine, to address the side-effects. He said that the side-effects were not alleviated, as his face remained swollen and his speech slurred. He said that the side-effects were reported daily.

¶ 11    Respondent testified that he continued the medications for six months after he was discharged but saw no changes in his symptoms, while he continued to experience side-effects such as dizziness, excessive dry mouth, blurred vision, speech impairment, inattentiveness, disorientation, decreased cognitive performance, swelling of the face and neck, pressure in his ears, and hearing echoes. He also gained 45 pounds, although his appetite decreased. Respondent said that the excess weight affected preexisting hip and sciatic pain. He needed hip-replacement surgery and estimated that he needed to lose 15 to 20 pounds to decrease the pressure on his sciatic nerve. Respondent met with a psychiatrist who gave him Geodon, but the side-effects still remained except for the swelling of the face and neck. He also saw a

general practitioner because of a stomach ulcer and was told that it was caused by the medications. Respondent quit taking the medications before his arrest on July 24, 2012. He said that the medications never helped his symptoms of schizophrenia and that the went away when he stopped taking the medications.

¶ 12     Respondent said that, because of the side-effects he previously experienced, he did not consent to taking medications. He said that he would take part in other forms of treatment. However, he admitted that he attended group therapy only 5 times in 30 days, although Susnjar told him that he should attend every day. He did not attend many groups because he believed that Susnjar knew he could answer questions when asked.

¶ 13     Susnjar was not aware of the numerous side-effects that respondent reported. No medical records showed that respondent experienced side-effects other than those after the initial dose of risperidone. According to Susnjar, the discharge records showed that, after he was given benztropine, no debilitating side-effects were reported. She also noted that the dose of risperidone had been decreased and that respondent previously told her that his swelling was reduced after he took Benadryl. She stated that side-effects are possible, especially with high doses, but she was not aware of patients gaining weight while having less appetite. She agreed that more weight on respondent's joints would be a problem. Susnjar stated that she would suggest different dosages or medications if side-effects occurred. However, she said that side-effects can also be associated with other medications. In her opinion, respondent was suffering, the benefits of psychotropic medication would outweigh the harm, and respondent did not have the capacity to make a reasoned decision about medication.

¶ 14     Susnjar stated that respondent was receptive to groups and was able to answer a lot of fitness questions in them. However, she believed that group therapy would not change respondent's opinion of the world and would not stabilize him unless accompanied by medication.

¶ 15     The court found that Susnjar provided clear and convincing evidence that there was a need to administer psychotropic medication against respondent's will and that the benefits outweighed the harm. In regard to the side-effects, the court expressed concern but also noted that the side-effects were self-reported. It then found that, although respondent believed that there were risks, he lacked the capacity to make a decision on the matter. The court found that respondent did not understand the advantages and disadvantages of medications and did not understand how they previously restored him to fitness and how he became unfit again when not taking them. The court granted the petition, authorizing the involuntary administration of psychotropic medications for up to 90 days. In regard to tests, it quoted the petition in its order, allowing certain specified tests but also "other tests necessary to evaluate safe administration of medications." Respondent appeals.

¶ 16                                    II. ANALYSIS

¶ 17     Relying on the Fifth District case of *In re Larry B.*, 394 Ill. App. 3d 470 (2009), first contends that the trial court failed to comply with section 2-107.1(a-5)(4)(G) of the Code (405 ILCS 5/2-107.1(a-5)(4)(G) (West 2012)) when it allowed his doctors to administer

unspecified tests. Respondent recognizes that the matter is moot because the order for administration of medication was for 90 days, which time has passed. However, he argues that exceptions to the mootness doctrine apply. The State agrees that exceptions apply.

¶ 18 "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006). Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998).

¶ 19 Reviewing courts, however, recognize exceptions to the mootness doctrine: (1) the public-interest exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties, (2) the capable-of-repetition exception, applicable to cases involving events of short duration that are capable of repetition, yet evading review, and (3) the collateral-consequences exception, applicable where the order could have consequences for a party in some future proceedings. See *In re Alfred H.H.*, 233 Ill. 2d 345, 355-62 (2009). There is no *per se* exception to mootness that universally applies to mental health cases; however, most appeals in mental health cases will fall within one of the established exceptions. *Id.* at 355. Whether a case falls within an established exception is a case-by-case determination. *Id.*

¶ 20 "The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *Id.* "The 'public interest' exception is 'narrowly construed and requires a clear showing of each criterion.' " *Id.* at 355-56 (quoting *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 292 (2003)). Questions about compliance with the Code involve matters of substantial public interest. *In re Nicholas L.*, 407 Ill. App. 3d 1061, 1071 (2011).

¶ 21 Here, respondent raises an issue of statutory compliance that is a matter of a public nature. The only case addressing respondent's argument is from another appellate district, showing a need for an authoritative determination of the matter. Further, without an authoritative determination of the matter from this district, it is likely to recur. Accordingly, the public-interest exception applies.

¶ 22 The involuntary administration of psychotropic medication to an individual alleged to be mentally ill implicates substantial liberty interests. *In re C.E.*, 161 Ill. 2d 200, 213-17 (1994). However, these liberty interests must be balanced against the State's legitimate interests in furthering the treatment of mentally ill individuals by forcibly administering psychotropic medication where an individual lacks the capacity to make reasoned decisions concerning his or her need for such medication. *Id.* at 217. In 1991, the General Assembly enacted section 2-107.1 as a mechanism for determining when psychotropic medication may be administered over an individual's objections. *Id.* Section 2-107.1 serves as a guide for balancing the liberty of the individual and the State's interest in treating its mentally ill citizens. *Id.*

¶ 23        Section 2-107.1(a-5)(4) directs that the forced administration of psychotropic medication is authorized only if the court finds each of the following elements, by clear and convincing proof:

> "(A) That the recipient has a serious mental illness or developmental disability.
>
> (B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.
>
> (C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.
>
> (D) That the benefits of the treatment outweigh the harm.
>
> (E) That the recipient lacks the capacity to make a reasoned decision about the treatment.
>
> (F) That other less restrictive services have been explored and found inappropriate.
>
> (G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2-107.1(a-5)(4) (West 2012).

¶ 24        We have not previously addressed a trial court order that broadly allowed "other tests necessary to evaluate safe administration of medications." However, *In re Larry B.* from the Fifth District provides guidance.

¶ 25        There, a petition was filed seeking the involuntary administration of medication and testing. The petition stated that the respondent would need periodic blood tests to monitor the level of drugs in his system and to prevent side-effects. At the hearing, the respondent's psychiatrist did not testify about the nature of the tests that he sought to administer. Instead, he was asked if he wanted the court to allow him to " 'do the testing and procedures necessary to make sure [that the administration of psychotropic medication was] safely and effectively done,' " and he replied " 'Yes.' " *In re Larry B.*, 394 Ill. App. 3d at 478. Medication and testing were ordered, and the respondent appealed. The Fifth District held that there was a lack of compliance with section 2-107.1(a-5)(4)(G). Noting that the State was required to prove by clear and convincing evidence that the testing and procedures requested in the petition were " 'essential for the safe and effective administration of the treatment,' " the court held that the evidence was insufficient. *Id.* (quoting 405 ILCS 5/2-107.1(a-5)(4)(G) (West 2008)). The court found that it "fell far short of clear and convincing specific expert testimony in support of a request for testing" and that the trial court's grant of permission to perform the tests "was made in an informational limbo, not a fully informed state, warranting the reversal of the trial court's order." *Id.*

¶ 26        Our approach to the sufficiency of the evidence for the administration of medication is also instructive. In that context, section 2-107.1 establishes strict standards that must be

satisfied before medication may be ordered over the objection of a patient. 405 ILCS 5/2-107.1(a-5)(4) (West 2012); *In re C.E.*, 161 Ill. 2d at 218. The Code requires specific evidence of the benefits and risks of each medication so that the trial court can determine whether the State has demonstrated by clear and convincing evidence that the benefits of the proposed treatment outweigh the potential harm. *In re Suzette D.*, 388 Ill. App. 3d 978, 985 (2009). "Thus, the State must produce evidence of the benefits of each drug sought to be administered as well as the potential side effects of each drug." *Id*. The trial court may not "delegate[ ] its duty of assessing the risks and benefits of the medication to respondent's treating physicians." *In re Val Q.*, 396 Ill. App. 3d 155, 163 (2009). The same logic applies to the administration of tests. Without specific evidence, a court is unable to determine which tests are essential to the safe and effective administration of treatment as required by the Code. The court may not delegate that determination to the respondent's doctors by allowing them to administer unspecified tests as they see fit.

¶ 27    Here, the court authorized "other tests necessary to evaluate safe administration of medications" without any evidence of what those tests might be. By doing so, the court allowed unknown tests to be administered absent clear and convincing evidence that they were "essential for the safe and effective administration of the treatment." 405 ILCS 5/2-107.1(a-5)(4)(G) (West 2012). That is, the court delegated its duty to Susnjar, allowing her to administer any test that she deemed essential. That is contrary to section 2-107.1(a-5)(4)(G). Accordingly, we reverse.

¶ 28    Although our holding with respect to compliance with the Code is dispositive, we nonetheless address respondent's next argument, that the trial court's determination that he lacked the capacity to make a reasoned decision was against the manifest weight of the evidence. See *In re Nicholas L.*, 407 Ill. App. 3d at 1074 (noting that resolution of the first issue was dispositive but nonetheless addressing respondent's remaining sufficiency-of-the-evidence argument).

¶ 29    Respondent's argument falls under the exception to the mootness doctrine for matters capable of repetition yet evading review. "This exception has two elements. First, the challenged action must be of a duration too short to be fully litigated prior to its cessation. Second, there must be a reasonable expectation that 'the same complaining party would be subjected to the same action again.' " *In re Alfred H.H.*, 233 Ill. 2d at 358 (quoting *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998)). "This means that the present action and a potential future action must have a substantial enough relation that the resolution of the issue in the present case would have some bearing on a similar issue presented in a future case involving the respondent." *In re Val Q.*, 396 Ill. App. 3d at 160 (citing *In re Alfred H.H.*, 233 Ill. 2d at 360).

¶ 30    Here, respondent had received similar psychotropic medications in the recent past and is suffering from a chronic mental illness that can inhibit his ability to make a reasoned decision about treatment. Thus, it is reasonably likely that he will be subjected to similar involuntary treatment orders in the future. See *In re Suzette D.*, 388 Ill. App. 3d at 983. "Also, the challenged action is obviously too short to be fully litigated during the pendency of the

order." *Id*. at 983-84. Accordingly, the capable-of-repetition exception is applicable to respondent's claim. See *id*. at 984.

¶ 31    "An individual has the capacity to make treatment decisions for himself when, based upon conveyed information concerning the risks and benefits of the proposed treatment and reasonable alternatives to treatment, he makes a rational choice to either accept or refuse the treatment." *In re Israel*, 278 Ill. App. 3d 24, 36 (1996). When determining whether an individual has the capacity to make a reasoned decision whether to take psychotropic medication, the trial court should consider the following factors:

> "(1) The person's knowledge that he has a choice to make;
>
> (2) The person's ability to understand the available options, their advantages and disadvantages;
>
> (3) Whether the commitment is voluntary or involuntary;
>
> (4) Whether the person has previously received the type of medication or treatment at issue;
>
> (5) If the person has received similar treatment in the past, whether he can describe what happened as a result and how the effects were beneficial or harmful; and
>
> (6) The absence of any interfering pathologic perceptions or beliefs or interfering emotional states which might prevent an understanding of legitimate risks and benefits." *Id*. at 37.

None of these factors is dispositive, and other factors that are relevant should be considered. *Id*.

¶ 32    As a reviewing court, we give great deference to the trial court's factual findings, but will reverse an order allowing the involuntary administration of psychotropic medication when the trial court's findings are against the manifest weight of the evidence. *In re Val Q.*, 396 Ill. App. 3d at 162. A judgment will be considered against the manifest weight of the evidence "only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence." *In re John R.*, 339 Ill. App. 3d 778, 781 (2003).

¶ 33    Here, the trial court's finding was not against the manifest weight of the evidence. Although the evidence showed that respondent knew that he had a choice about medication, Susnjar testified that he was unable to understand the advantages and disadvantages of medication because his fears and false beliefs made him unable to appreciate his problems. Supporting that view were the facts that respondent was involuntarily admitted, he did not believe that he had a mental illness, and he did not attend group treatment as suggested. Further, although he previously received several of the medications prescribed, there was a conflict of evidence on how he tolerated those. Respondent reported numerous side-effects, while Susnjar noted medical reports that were inconsistent with his testimony and showed that he responded to treatments for side-effects. The trial court, as the finder of fact, was entitled to credit Susnjar's testimony based on medical records over respondent's testimony.

¶ 34 Based on the evidence as a whole, it was reasonable to conclude that respondent lacked the ability to understand the risks and benefits of taking medication. Accordingly, the trial court's finding that respondent lacked the capacity to make a reasoned decision was not against the manifest weight of the evidence.

¶ 35                                          III. CONCLUSION

¶ 36 The evidence was sufficient to prove that respondent lacked the capacity to make a reasoned decision about medication. However, the trial court failed to comply with the Code when it allowed respondent's doctors to administer unspecified tests. Accordingly, the judgment of the circuit court of Kane County is reversed.

¶ 37 Reversed.